William KREIJANOVSKY, Appellant;

v.

STATE of Oklahoma, Appellee.

No. F-83-221.

Court of Criminal Appeals of Oklahoma.

Sept. 23, 1985.

Mark H. Barrett, Special Counsel, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Terry J. Jenks, Legal Intern, Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

William Kreijanovsky was convicted in Comanche County District Court, Case No. CRF–82–190, on charges of Second Degree Burglary and First Degree Arson, in violation of 21 O.S.1981, §§ 1435 and 1401. The appellant was sentenced to six (6) years' and fifteen (15) years' imprisonment, respectively, to be served consecutively.

On March 29, 1982, property was stolen from the home of Robert Phillips shortly before his house was destroyed by fire. Several witnesses saw a pickup similar to

the appellant's in the Phillips' neighborhood on the afternoon of the crimes. The pickup circled Carol Marshall's house between 2:15 and 2:30 p.m. Delores Given saw the pickup parked at the Phillips' home at 2:00 p.m., one hour before she noticed the fire. The pickup was observed at the house less than ten minutes prior to the fire by neighbor Carl Roberts. Don Ward, who lives one-half mile from Robert Phillips, watched an identical pickup, loaded with furniture, stop briefly in front of his house at 3:00 p.m. Fire experts testified that the fire was the result of arson and that gasoline was used to fuel the blaze.

The day following the fire, Ronald Crader, a friend of the appellant's, visited appellant Kreijanovsky's home where he observed "a whole lot of stuff that wasn't there before." After first explaining that he had been to a garage sale, the appellant confessed to Crader that he had burglarized Robert Phillips' house. He denied starting the fire.

Pursuant to a call from Crader's wife, Comanche County Deputy Sheriff Harold Sims arrested Kreijanovsky on March 31. At the station, the appellant signed a rights waiver and confessed to the burglary. When the two questioning officers interrogated Kreijanovsky in regard to the arson charge, the appellant requested a lawyer and refused to speak. Immediately thereafter the appellant was asked to sign a consent-to-search form authorizing search of his house. After signing the consent, Kreijanovsky, Sims, and Banks went to the appellant's home where fruits of the burglary were seized along with a gas can, which was the only physical evidence linking the appellant to the fire. The appellant claimed he purchased the can on March 30 to carry fuel for a lawnmower he had stolen in the burglary. Kreijanovsky denied that he, in any way, started a fire at the home of Robert Phillips.

Appellant's first assignment of error concerns prosecutorial comments on the appellant's decision to remain silent. During the State's case-in-chief the prosecutor elicited the following comments from Deputy Sims on direct examination:

Q. And what was the substance of the conversation?

A. We asked him about whether he had been out in that area, and whether he had been at that residence, and he said that he had taken the stuff from Mr. Phillips' house, and we talked to him on this and asked him where the merchandise was at, and he said it was still all at his residence over on Floyd, and we talked to him probably about twenty minutes on this, and then when we started asking him anything about the fire, he said he wanted a lawyer.

Q. During the period of your—course of your conversation up to the time that he requested an attorney, did you ask him any questions in regard to the fire?

A. No, sir, not until we started talking to him. We talked about the burglary, and then when we started talking about the fire, he wouldn't talk to us on that.

 . . . . .

Q. Other than that, were there any other references to the fire?

A. None that I know of, no.

Q. Okay. After having the conversation you have testified to with him, what did you do?

A. Okay. At 12:32, approximately 12:32, he asked for his attorney, so we stopped questioning at that time.

 . . . . .

Q. After he requested an attorney, did you interrogate him any further?

A. No, sir, not pertaining to the fire or anything.

Tr. 131–33.

■ It is improper for a prosecuting attorney to comment, even for impeachment purposes, on an accused's failure to give up the right to remain silent after accused has received *Miranda* warnings. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 59 L.Ed.2d 91 (1976); *State v. Neal*, 604 P.2d 145 (Okl.Cr.1979). In the instant case, the evidence of appellant's silence was repeatedly introduced during the State's

case-in-chief, not for impeachment purposes on cross-examination. This makes the comments more offensive because the only purpose served was prejudice to the defendant. Had the prosecutor ceased after the first question the error probably would not have been prejudicial. His continued questioning, however, compounded the error, causing it to be prejudicial.

Similar comments in *Dungan v. State*, 651 P.2d 1064 (Okl.Cr.1982), constituted fundamental error. *Dungan* held that such evidence was totally irrelevant and that since the questions were of no probative value, their sole effect was to prejudice the appellant.

■ Due to the lack of probative value of the evidence and its extreme prejudicial consequences, this Court is unable to hold that the comment on appellant's post-arrest silence was harmless beyond a reasonable doubt as to the arson charge. The arson conviction must therefore be reversed. The comment was harmless beyond a reasonable doubt, however, as to the burglary charge in light of the overwhelming evidence. Thus, that conviction does not warrant reversal. Title 20 O.S.1981, § 3001.1.

■ The appellant also alleges that the trial court's failure to instruct, sua sponte, on the issue of voluntary intoxication was fundamental error, because the appellant's testimony that he had consumed five quarts of beer negated the specific intent element of the crimes charged. Initially we note that arson is not a specific intent crime, and voluntary intoxication is available as a defense only when the crime with which the defendant is charged has as its mens rea element a specific criminal intent or a special mental element. *See* 21 O.S. 1981, § 1401 and *Boyd v. State*, 572 P.2d 276 (Okl.Cr.1977), respectively.

■ As to the burglary, the evidence presented in the instant case regarding the appellant's intoxication was insufficient to require an instruction. According to his own testimony, the appellant at one point "decided" to load the victim's possessions into appellant's pickup truck. When asked

at trial by his own attorney whether he took precautions at the victim's home to try to hide his identity or to prevent discovery, he answered that he had worn gloves and wiped the only doorknob he had touched without the gloves. As appellant's testimony negated the defense by demonstrating he was in control of his mental faculties, the court's failure to instruct, sua sponte, on voluntary intoxication was not error. *See Norman v. State*, 648 P.2d 1243 (Okl. Cr.1982).

■ Next the appellant contends that a conviction for First Degree Arson cannot be soundly based when no one was actually in the home during the blaze.

21 O.S.1981, § 1401 provides:
Any person who willfully and maliciously sets fire to or burns or by the use of any explosive device or substance destroys in whole or in part, or causes to be burned or destroyed, or aids, counsels or procures the burning or destruction of any building or structure or contents thereof, *inhabited* or occupied by one or more persons, whether the property of himself or another, shall be guilty of arson in the first degree ... (Emphasis added.)

21 O.S.1981, § 1402 reads as follows:
Any person who willfully and maliciously sets fire to or burns or by the use of any explosive device or substance destroys in whole or in part, or causes to be burned or destroyed, or aids, counsels or procures the burning or destruction of any *uninhabited* or unoccupied building or structure or contents thereof, whether the property of himself or another, shall be guilty of arson in the second degree.... (Emphasis added.)

The Oklahoma Uniform Jury Instruction Criminal 502 correctly defines inhabited: "A building or structure is deemed to be inhabited if any part of it is normally used by any person for lodging." Although the dwelling in the present case was unoccupied at the time of the fire, it was certainly inhabited as the place where the Phillips family lived. When an inhabited structure is burned, the probability of someone being

inside is very high. Due to such a high probability, risks persist to firefighters and rescuers who believe that people are present. We hold that 21 O.S.1981, § 1401 allows a conviction for the willful burning of a building or structure presently used for lodging, notwithstanding the absence of occupants at the time of the fire.

The appellant complains that the prosecutor's cross-examination prejudiced the outcome at trial. The prosecutor inquired whether the defendant was telling the truth. This query culminated in the question, "Now do you expect the jury to believe you today if you lied to your friend, Ron Crader, the day after this occurred, about where you got the stuff?" We find the question acceptable for impeachment purposes.

The appellant further complains that photographs of the scene of the fire were improperly admitted and that evidence of other crimes was introduced without following the rules of *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979). Neither issue is properly before this Court. The photographs were not included in the record for the Court's review. It is the duty of the appellant to ascertain the presence of exhibits, upon which he intends to rely, before submission of the record to this Court. *England v. State*, 496 P.2d 382 (Okl.Cr. 1972). Because the appellant did not object at trial to the admission of evidence of other offenses, the *Burks* issue was not properly preserved for review. *See Young v. State*, 531 P.2d 1403 (Okl.Cr.1975).

Finally the appellant complains of the introduction of evidence allegedly seized after a *Miranda* violation. He alleges that his consent to search was given after he had invoked his right to counsel and that the evidence obtained pursuant to the invalid consent search should have been suppressed. While this issue was not properly preserved for review on appeal, we address this question as it is a novel one likely to be an issue on retrial of the arson charge. The question presented is whether requesting an accused who is in custody to execute a consent-to-search form after he has in-

voked his right to counsel is tantamount to interrogation and violative of his *Miranda* rights.

The *Miranda* safeguards come into play whenever there exists both custody and interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). While in custody, appellant signed a rights waiver and was interrogated on the burglary charge. The appellant requested counsel when the discussion turned to the arson charge. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning." *Id.* at 474, 86 S.Ct. at 1627.

After Kreijanovsky's request, express questioning did cease. However, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980).

While a signature, in and of itself, may not be incriminating, the resulting action taken on the signature may often lead to an incriminating response. Since the appellant had already confessed to committing the burglary, the police had good reason to know that a consent to search would be reasonably likely to elicit the incriminating response that it did in fact produce. The items from the burglary and the gas can proved to be very incriminating at trial.

A request for consent to search is the "functional equivalent" of express questioning under *Rhode Island v. Innis*. Such interrogation cannot occur after a defendant has invoked the right to counsel. *Miranda*, 384 U.S. at 436, 86 S.Ct. at 1602.

The purpose of the *Miranda* warning is to inform an individual in custody that he may refuse further interrogation and ob-

tain legal advice as to his rights. New York's highest court ruled that it is constitutionally impermissible for police officers to seek consent to search after a defendant in custody has requested an attorney because:

> The defendant's rights are no less at stake and the advice of counsel no less important if the police seek a relinquishment of defendant's constitutional right to be secure against unreasonable searches and seizures than if they seek a waiver of his privilege against self incrimination.

*People v. Johnson,* 48 N.Y.2d 565, 423 N.Y. S.2d 905, 399 N.E.2d 936, 938 (1979).

 Having asked for counsel the appellant was entitled to legal advice as to his rights and as to the consequences of his consent to the search. In this sense appellant's Fourth Amendment rights were encompassed by the *Miranda* warning. Furthermore the appellant had both a Fifth Amendment and State constitutional right to be free from coercion to provide the police with any evidence which would tend to incriminate him. Okla. Const. art. 2, § 21.

 We conclude that once an individual in custody requests an attorney, interrogating officers must not seek further consensual admissions, whether in the form of confession, consent to search, or waiver of other privileges.

AFFIRMED as to the Burglary and REVERSED as to the Arson.

PARKS, P.J., concurs.

BUSSEY, J., concurs in part, dissents in part.

BUSSEY, Judge, concurring in part, dissenting in part:

I agree that the judgment and sentence in the burglary conviction should be affirmed; however, I do not agree to the reversal of the arson conviction insofar as it was based upon *Rhode Island v. Innis,* supra. The record reveals that the defendant's counsel specifically stated that he had no objection to the admission of the gas can at trial; thus, the defendant is prohibited from asserting this error on appeal by 12 O.S.1981, § 2104(A); see also for instance, *Thacker v. State,* 303 P.2d 449 (Okl.Cr. 1956).

Furthermore, if the alleged error had been properly preserved for appellate review, I am of the opinion that the gas can should not be suppressed, as I do not agree with the majority opinion's interpretation and application of the Supreme Court's holding in *Rhode Island v. Innis,* supra. In that case, the defendant had been arrested near a school for the shotgun murder of a taxicab driver and the armed robbery of another. With knowledge that the shotgun was very possibly concealed in close proximity to a school near the location where the defendant was arrested, the police officers, who were transporting Innis to the station house, engaged in a conversation regarding the danger the weapon posed to the children. Consequently, Innis responded with a request to return to the scene as he "wanted to get the gun out of the way because of the kids in the area of the school." The police were found to have improperly engaged in a practice which they "know [or should have known] is reasonably likely to evoke an incriminating response from a suspect." However, in the case at bar, I am of the opinion that the mere signing of a consent to search form of his residence so that illgotten goods could be expeditiously regained, was not an incriminating response prohibited by *Rhode Island v. Innis.* Nothing in the record supports the holding that the finding of the gas can was a result the law enforcement agents could or should have reasonably known would follow from the defendant's signing of the consent to search form.