Wade Lee WOOD, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–674.

Court of Criminal Appeals of Oklahoma.

Dec. 31, 1987.

David Autry, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Wade Lee Wood, was tried and convicted in the District Court of Seminole County of Burglary in the First Degree in violation of 21 O.S.1981, § 1431, in Case No. CRF–84–197 and was sentenced to seven (7) years' imprisonment.

In the early morning hours of August 24, 1984, Mary Cameron was awakened by the sound of breaking glass coming from the area of the building where the liquor store she owned and operated was located, in Bowlegs, Oklahoma. When she looked out her bedroom window, she saw three men taking beer and wine through a broken window in the store. She called her daughter nextdoor who immediately called the police. Ms. Cameron then picked up her shotgun and went outside to confront the intruders. She was joined there by her son-in-law who was similarly armed. The two observed three men running towards the nearby highway. Both Cameron and

her son-in-law fired in the direction of the fleeing burglars. The men disappeared from sight and Ms. Cameron and her son-in-law heard a car with loud exhaust start up and leave in a southerly direction.

When the Deputy Sheriff arrived, he noticed several unopened cans of Carling Black Label beer on the ground in the immediate vicinity of the broken window. It was also evident, from fresh blood on the glass, building and ground around the window, that one of the burglars had been badly cut when the window was broken.

Two hours earlier, the deputy had heard a radio report that a white Nova driven by the appellant, in the company of three other men, had been stopped in a nearby town for an excessively loud exhaust system. Since the deputy knew Wood's car and where he lived, he drove to his house to see if he had come home. Not finding Woods at home, the deputy continued his patrol.

Approximately one and one-half miles south of Mrs. Cameron's store, the deputy saw a white Nova with three occupants parked in a grocery store parking lot. The deputy immediately approached the vehicle and ordered the occupants out. As the men got out of the car, the deputy noticed that the driver, the appellant, had been drinking a Carling Black label beer; also, the man in the front passenger seat was holding blood-soaked towels around his right arm. The deputy then arrested the three occupants and informed them of their rights per *Miranda*.

After the injured man had been taken to the hospital to have his wound treated and all three had been booked at the police station, a search warrant for the Nova was obtained. When officers arrived at the wrecker yard where the car had been impounded, they observed that the exterior passenger side of the Nova was spattered with blood. Blood stains were also found inside the car. Later testing of blood samples taken at the crime scene, from the injured man's bandage, and from the car revealed that all samples were blood type "O". The officers also found beer and wine in the Nova's trunk. The brand names and quantity corresponded with that taken from Mrs. Cameron's store.

The appellant's first assignment is that fundamental and reversible error occurred when, during cross-examination, the prosecutor questioned the defendant regarding his post-arrest silence and later commented on the subject during closing argument. Stated more precisely, the prosecutor's question was directed at the appellant's failure to offer his allegedly exculpatory account of the evening's events to the arresting officer:

Q. (By the prosecutor) When the Deputy got there, did you tell him that something happened here and I wasn't part of it?

A. (By the defendant) No sir, I didn't say nothing to him.

Q. You didn't say—You didn't say anything to anybody until you got here in court today, right?

A. Right. I talked to my lawyer.

Q. So, you are going to tell this jury this story that you don't know what happened and this is the first time that anybody has heard this story?"

A. Right."

In his closing argument, the prosecutor reminded the jury that the appellant had not offered his version of the events of that night until trial, suggesting that if he had spoken up, there would not have been the necessity for a trial at all.

In responding to this assignment of error, the State is quick to point out the fact that no objections were voiced either to the cross-examination or to the closing arguments. Therefore, the State argues, this assignment has been waived because it was not preserved for appeal. *See Tate v. State*, 732 P.2d 902 (Okl.Cr.1987); *Martin v. State*, 674 P.2d 37, 41 (Okl.Cr.1983). The appellant recognizes this defect in the record, yet argues that in this case, fundamental error exists which obviates the necessity of objections to preserve the error. Both parties cite *Dungan v. State*, 651 P.2d 1064 (Okl.Cr.1982), as supporting authority.

■ This Court remains committed to the general rule that a timely objection must be made on the record to preserve any alleged error for appellate review. *See e.g. Hines v. State*, 684 P.2d 1202 (Okl.Cr. 1984) (failure to object to introduction of evidence waives error); *Lott v. State*, 586 P.2d 70 (Okl.Cr.1978) (failure to object to statements made to the jury by the trial judge); *Reams v. State*, 551 P.2d 1168 (Okl.Cr.1976) (failure to object to verdict forms). Fundamental error is the sole exception to this rule. *Harris v. State*, 645 P.2d 1036 (Okl.Cr.1982). Application of these rules, therefore, makes it unnecessary to consider the appellant's second assignment of error (admission of evidence found in the Nova's trunk); because of counsel's failure to object at almost any stage of this trial.

■ Our examination of the record and the authorities cited by both parties reveals that fundamental error may have occurred in this case. Our analysis must start, however, not with the Oklahoma decisions cited, but with the United States Supreme Court decision upon which our cases have turned.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court ruled that "the use *for impeachment purposes* of [defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violated the due process clause of the Fourteenth Amendment." 426 U.S. at 619, 96 S.Ct. at 2245 (emphasis added). In a footnote to this passage, the Court made it clear that post-arrest silence used to contradict a defendant's in court testimony that he did provide a post-arrest exculpatory statement, can be used "to challenge the defendant's testimony as to his behavior following arrest." *Id.*

The rule from *Doyle* was recognized by this Court in *Dungan v. State*, 651 P.2d 1064 (Okl.Cr.1982), which is the case relied upon by both parties to this appeal. A careful reading of *Dungan* shows, however, that it is not precisely on point with the facts here. In *Dungan*, *Doyle* was determined inapplicable because the "evidence of Dungan's post-arrest silence was introduced during the *State's case-in-chief.*" 651 P.2d at 1065 (emphasis supplied.) There, the information was brought before the jury during direct examination of the arresting officer. Only after that distinction from *Doyle* was recognized did we go on to say that the "substantive issue ... is whether the appellant waived the prosecutor's impropriety by failing to object...." *Id.*

A similar pattern existed in a later case, *Martin v. State*, 674 P.2d 37, 41 (Okl.Cr. 1983); where we ruled that assignment of error from a similar improper comment, that had been elicited during the State's case-in-chief, was waived by counsel's failure to object. The same basic fact pattern existed in *Tate v. State*, 732 P.2d 902 (Okl. Cr.1987), where we found a similar assignment of error meritless.

In *Kreijanovsky v. State*, 706 P.2d 541, (Okl.Cr.1985), this Court reversed an arson conviction because, as in *Dungan, supra,* the prosecutor elicited evidence of post-arrest/post-*Miranda* silence during his case-in-chief and compounded the error by continued reference. There, we were "unable to hold that the comment on appellant's post-arrest silence was harmless beyond a reasonable doubt...." 706 P.2d at 544.

In this case, in part because counsel did not follow proper procedure in obtaining a witness in custody of the department of corrections, the defendant was the only witness for the defense. The prosecutor's question was an obvious attempt to discredit the appellant's direct testimony regarding his purported exculpatory account of the events surrounding the burglary. In that sense, the facts are like those in *Doyle v. Ohio, supra,* and the rule from *Doyle* is applicable. Also, because the prosecutor made additional reference to the appellant's silence during closing argument; the level of possible prejudice rises to that condemned by this Court in *Dungan v. State, supra,* and *Kreijanovsky v. State, supra.* In addition, we are unaware of any cases where such a reference to post-*Miranda* silence that is made during cross-examination for impeachment purposes has been held to be harmless error.

The evidence that the appellant was the third man seen leaving the scene of the burglary is, although weighty, entirely circumstantial. *See Dungan v. State, supra.* The reference to his post-*Miranda* silence was first used solely for impeachment purposes on cross-examination and as such, is a violation of the appellant's rights under the due process clause of the Fourteenth Amendment to the United States Constitution. *Doyle v. Ohio, supra.* While the prosecutor's transgression was less severe here than the violation in *Doyle,* his reference to the appellant's silence during closing argument rises to the level of probable prejudice found in *Dungan, supra,* and *Kreijanovsky, supra,* and fundamental error found in *Buchanan v. State,* 523 P.2d 1134 (Okl.Cr.1974).

Because we are unable to conclude that these errors were harmless beyond a reasonable doubt, *Kreijanovsky, supra,* at 544, we need not, therefore, address the remaining assignment raised by the appellant. We are of the opinion that the judgment and sentence appealed from should be, and the same hereby is REVERSED and REMANDED for a new trial.

BRETT, P.J., and PARKS, J., concur.