**Mark Lee LANGLEY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–89–341.**

Court of Criminal Appeals of Oklahoma.

June 5, 1991.

Barry Derryberry, Asst. Public Defender, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., Steven Spears Kerr, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice-Presiding Judge:

Appellant Mark Lee Langley was tried by jury and convicted of First Degree Burglary (Count I) in violation of 21 O.S.1981, § 1431, Attempted Kidnapping (Count II) in violation of 21 O.S.1981, § 741, Feloniously Pointing a Weapon (Count III) in violation of 21 O.S.1981, § 1289.16, and Battery with a Dangerous Weapon (Count IV) in violation of 21 O.S.1981, § 645, Case No. CF–88–1149, in the District Court of Tulsa County. The jury recommended as punishment twelve (12) years in prison on Count I, three (3) years in prison on Count II, ten (10) years in prison for each of Counts III and IV. The trial court sentenced accordingly and ordered the sentences to run consecutively. It is from this

judgment and sentence that Appellant appeals.

On March 11, 1988, at approximately 8:00 p.m., Joel Wohlgemuth and his family returned home after eating dinner at a local restaurant. The family entered the house through the garage. Once inside, Mrs. Wohlgemuth went to a back bedroom to change clothes, their two young sons and a friend went to an adjoining play room and Mr. Wohlgemuth retired to the den to watch television. A few minutes later, he saw two young men run through his kitchen and into the den. One of the men, later identified as the Appellant, had a gun in his hand and pointed it at Mr. Wohlgemuth. As he did so, he shouted at his companion to put handcuffs on Mr. Wohlgemuth. Appellant looked at Mr. Wohlgemuth and said "You are coming with us or I am going to blow your _____ head off." (Tr. 418) The handcuffs were placed only on Mr. Wohlgemuth's right hand, when he began to back away from the men. Appellant shook the gun at him and shouted "If you don't want the kids hurt, you are coming with us." (Tr. 418)

Appellant's companion was unable to put the other handcuff on Mr. Wohlgemuth's left hand, and gradually moved away from the action. As Appellant turned to shout at him, Mr. Wohlgemuth swung at the Appellant and hit him in the face. A struggle ensued with both men falling through the sliding glass doors onto the patio outside. Mr. Wohlgemuth attempted to get up, but Appellant hit him with the butt of the gun several times. Mr. Wohlgemuth finally succeeded in getting up only to see the two assailants run through his back yard and climb over the fence.

At trial, the State presented evidence which showed that the Appellant went to the emergency room at St. John's Hospital during the early morning hours of March 12. Appellant reported that he had been stabbed with a pocketknife. When informed that the police would have to be notified, Appellant ran out of the hospital. Later that same day, Appellant went to St. Francis Hospital seeking aid for his alleged stab wounds. Appellant refused to let doctors examine him and left with only a prescription for pain medication.

Appellant presented an alibi defense at trial. In addition to his own testimony, Appellant presented the testimony of six (6) witnesses who stated that he had attended a friend's birthday party on March 11. A fight broke out at the party and the Appellant was stabbed. Appellant admitted going to the hospitals for treatment, but stated that he left when informed that the police would be notified because he had an outstanding arrest warrant.

The preliminary hearing in this matter was held April 5, 1988. After the State had presented its case and rested, Appellant entered a demurrer to the evidence of all four counts. The magistrate overruled the demurrer as to counts II, III and IV and bound the Appellant over for trial on those charges. The demurrer as to count I, First Degree Burglary, was upheld, with a finding that the State did not present sufficient evidence of the element "breaking". The prosecutor requested permission to reopen the case and in the alternative announced her intention to file a Rule Six appeal, now codified as 22 O.S.Supp.1989, § 1089.1 *et seq.* The request to reopen was denied and the case set for a Rule Six appeal.

A hearing was held on April 26, 1988, before the Honorable Jay Dalton, District Judge. In an order dated April 27, 1988, Judge Dalton stated, in part:

The Court has examined the transcript of the preliminary hearing and the applicable law and finds that the preliminary magistrate abused his judicial discretion in not allowing the State to reopen its case before entering a demurrer to Count I of the Information.

It is therefore the order of the Court the case be remanded to Judge Rineer for the purpose of allowing the State to reopen its case in order to present evidence to establish the "breaking" element required for Count I. In so ordering the Court does not limit the State to calling only the victim to testify when it reopens. (O.R. 23)

Subsequently, Appellant appealed the order of the District Court to this Court requesting the issuance of a writ of mandamus and/or prohibition. This Court declined to assume jurisdiction, Judge Parks dissenting. (O.R. 29) A preliminary hearing was conducted on May 20, 1988. Upon the testimony of one witness, the magistrate found that the State had presented sufficient evidence and the Appellant was bound over for trial on the first degree burglary charge.

■ In his first assignment of error, Appellant contends that the district court exceeded its authority under 22 O.S.Supp. 1987, § 1089.5, and erred in allowing the State to reopen its case at preliminary hearing to present further evidence of a burglary. The State responds that the district court's ruling was proper pursuant to 22 O.S.Supp.1987, § 1089.6.

The procedures for an appeal by the State are set forth in 22 O.S.Supp.1987, § 1089.1–1089.7. Section 1089.1 provides, in pertinent part, that the State may appeal an adverse ruling or order of a magistrate sustaining a motion to suppress evidence, quashing an information, sustaining a plea to the jurisdiction of the court, sustaining a demurrer to the information, or discharging a defendant at the preliminary hearing because of insufficiency of evidence to establish either that a crime has been committed or that there is probable cause to believe that the accused has committed a felony. Where the district judge sits as a reviewing judge of a preliminary hearing magistrate's determination that a defendant be discharged because of insufficient evidence, his scope of review is set forth in Section 1089.5. The section provides in pertinent part:

... the assigned judge shall determine, based upon the entire record developed before the magistrate, whether the evidence, taken in the light most favorable to the state, is sufficient to find that a felony crime has been committed and that the defendant probably committed said crime.

Section 1089.6 sets forth the scope of action to be taken by the reviewing judge when the magistrate's ruling or order is found to be erroneous:

In the event the assigned judge finds, based upon the record developed before the magistrate, that the magistrate's ruling or order was in error, the assigned judge shall enter an order finding that the ruling or order entered by the magistrate was erroneous and shall remand the cause to the magistrate with directions to enter a proper ruling or order.

Read together, these statutes only empower the assigned judge to review the record to determine if the evidence presented shows a crime has been committed and that the defendant probably committed said crime, and to issue an order that the magistrate either bind the defendant over for trial or dismiss the case. The reviewing judge is limited to the authority set forth in Section 1089.5 and is not empowered to remand the case with directions to allow a party to reopen its case.

■ In the event of an appeal by the State based upon a dismissal for insufficient evidence, the reviewing judge is restricted to a determination of the sufficiency of the evidence on the record as to whether a crime has been committed and whether there is probable cause to believe the defendant committed the offense. The reviewing judge, in this case Judge Dalton, only possessed the authority to determine if the evidence was sufficient to overrule the discharge of Count I by the examining magistrate, Special Judge Rineer. The reviewing judge exceeded his authority in ordering the magistrate to allow the State to reopen its case and present additional evidence.

■ Further, in *Thomas v. Hopper*, 770 P.2d 901, 903 (Okl.Cr.1989), we stated that in hearing an appeal by the State, the reviewing judge is in effect functioning within the framework of a magistrate's jurisdiction. Title 22 O.S.1981, § 576, which provides that the judge who conducts the preliminary examination shall not try the case except with the permission of the parties, applies not only to magistrates who first hold the preliminary hearing but also to a

judge who hears any state appeal as authorized by Section 1089. Therefore, the reviewing judge in a state appeal is precluded from conducting the trial unless all parties agree.

Therefore, the decision by the magistrate to discharge the Appellant on the first degree burglary charge should not have been reversed and the burglary charge should not have gone to a jury. The conviction as to Count I, first degree burglary, must therefore, be reversed and remanded with instructions to dismiss.

■ In his second assignment of error, Appellant contends that he was prejudiced by an evidentiary harpoon in the testimony of Dr. Edwards, the doctor who attempted to help Appellant at St. John's Hospital. On direct examination, Dr. Edwards was asked to review the Appellant's medical records for information provided by Appellant concerning when he received his wounds and any other specific information provided by Appellant. Dr. Edwards stated in part that Appellant was a "nineteen year old white male with a history of ethanol and crack usage." Appellant immediately objected to the testimony, moved for a mistrial and requested an admonishment. The trial judge inquired of the prosecutor whether she had anything specific she intended to draw out of the examination. She responded with "[s]orry. I didn't know because I can't read those notes, what they said." (Tr. 570)

■ Evidentiary harpoons are generally characterized by certain features: (1) they are generally made by experienced police officers; (2) they are voluntary statements; (3) they are willfully jabbed rather than inadvertent; (4) they inject information indicating other crimes; (5) they are calculated to prejudice the accused; and (6) they are prejudicial to the rights of the accused on trial. *Bruner v. State*, 612 P.2d 1375, 1378 (Okl.Cr.1980). The statement in the present case does not have the above characteristics of an evidentiary harpoon. The record clearly shows that it was an inadvertent remark and not an intentional introduction of evidence of other crimes. The Appellant was not prejudiced by the

statement as it was a single reference, not repeated. We reject Appellant's argument in the alternative that the trial court erred in failing to admonish the jury not to consider the remark. In this instance, such an admonition would have placed undue emphasis on the evidence and only served to prejudice the Appellant in the eyes of the jury.

■ Appellant contends in his third assignment of error that the trial court erred in denying his requested cautionary instruction on eyewitness identification. In *Renfro v. State*, 734 P.2d 286 (Okl.Cr.1987), this Court addressed the issue of when a cautionary instruction regarding identification of the appellant by an eyewitness is necessary. Relying on *Pisano v. State*, 636 P.2d 358 (Okl.Cr.1981), we stated that a cautionary instruction is not necessary if the following conditions are met:

(1) If there was a good opportunity for positive identification; (2) if the witness is positive in his identification; (3) if the identification is not weakened by prior failure to identify; and (4) if the witness remains positive as to the identification, even after cross-examination.

734 P.2d at 288.

In the present case, the victim testified that during the assault he focused his attention on the Appellant. The reasons for this being the Appellant's possession of the gun and the appearance that the Appellant was the leader of the two men. Mr. Wohlgemuth stated that he carefully watched Appellant's eyes in an attempt to anticipate his moves. Mr. Wohlgemuth testified that the assault lasted approximately ten (10) minutes and his house was well lighted that evening. Although the Appellant had a pair of pantyhose pulled over his head, Mr. Wohlgemuth was able to see Appellant's face and described it as narrow with a light colored moustache and surrounded by long hair with a light reddish tint to it. He further described Appellant as approximately as 5'6", slight build, approximately 130 pounds, and approximately 20 years old. He could only describe Appellant's clothing as dark colored.

Mr. Wohlgemuth consistently identified Appellant at trial, never wavering on cross-examination. Additionally, he identified Appellant at a pre-trial lineup. As Mr. Wohlgemuth had a good opportunity to identify Appellant and remained consistent in that identification, we find it was not necessary to give a cautionary instruction on eyewitness identification. Therefore, the trial court did not err in failing to give Appellant's instruction. This assignment of error is accordingly denied.

■ In his final assignment of error, Appellant contends that he was denied a fair trial by prosecutorial misconduct. Appellant initially objects to two comments; one made during opening statement and the other made in closing argument, which allegedly invoked sympathy for the victims and were designed and calculated solely to inflame the passions and prejudices of the jury against the Appellant.

■ Initially, Appellant has waived all but fundamental error review of the comment from the opening statement as he failed to enter a contemporaneous objection. Appellant waited until the end of the State's opening statement to object to the remark. It is essential that a timely objection be made in order to preserve an error for appeal. *See Wood v. State*, 748 P.2d 523, 525 (Okl.Cr.1987). A timely objection brings the alleged error to the attention of the trial court and provides an opportunity to correct the error at trial. *Davis v. State*, 753 P.2d 388, 392 (Okl.Cr.1988).

A review of both comments reminds us of prior decisions from this Court directing the prosecutor to refrain from asking the jury to have sympathy for the crime victims. *See Jones v. State*, 738 P.2d 525, 529 (Okl.Cr.1987), and cases cited therein. However neither comment is so egregious as to have prejudiced the Appellant.

■ Appellant further objects to a comment concerning photographs from the birthday party attended by Appellant. In essence, the prosecutor remarked that it was unusual for a roll of film to have only eighteen pictures on it. Defense counsel's objection was overruled with the comment that "the jurors will recall what the evidence is." (Tr. 878)

■ Although prosecutors should not misstate the evidence, a minor misstatement of fact will not warrant a reversal unless, after a review of the totality of the evidence, it appears the same could have affected the outcome of the trial. *Mornes v. State*, 755 P.2d 91, 94 (Okl.Cr.1988); *Hartness v. State*, 760 P.2d 193, 194 (Okl. Cr.1988). Here, Danny Rollins testified that the photographs were taken by himself and his father at the party. Mr. Rollins stated that the eighteen (18) pictures offered into evidence comprised the entire roll of film. (Tr. 750) In light of this testimony, we fail to see how the prosecutor's misstatement could have affected the outcome of the trial. *See Cunningham v. State*, 748 P.2d 520, 522 (Okl.Cr.1987).

■ Finally, Appellant asserts that the prosecution accused the defense of misleading the jury by continually referring to the fact that the victims were personally acquainted with one of the police officers working on the case. (Tr. 879) To the contrary, we find the comments were reasonable inferences from the evidence well within the permissible range of closing argument. Accordingly, this assignment of error is denied.

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence in Counts II, III and IV are AFFIRMED.

LANE, P.J., and JOHNSON, J., concur.

BRETT and PARKS, JJ., concur specially.

PARKS, Judge, specially concurring:

I agree that the statement made by Dr. Edwards did not constitute an evidentiary harpoon because there is no indication that the statement was calculated to prejudice appellant. However, because the statement did concern improper evidence of oth-

er crimes, appellant was entitled to the requested admonishment. I am disturbed by the following statement made by the majority excusing the trial court's failure to admonish the jury: "In this instance, such an admonition would have placed undue emphasis on the evidence and only served to prejudice the Appellant in the eyes of the jury." (Majority at 530). Obviously, defense counsel did not agree with this view or the request would not have been made. This Court should not substitute its view for those of defense counsel on the probably effect of a requested admonishment.

In the instant case defense counsel made a request and the evidence shows that he was entitled to the admonishment requested. Despite the majority's professed belief as to its probable effect, I find that the failure to give the admonishment was error. However, I do not believe that such error determined the verdict or resulted in a miscarriage of justice. *See* 20 O.S.1981, 3001.1. On this basis, I concur in the results reached by the majority.

BRETT, Judge, specially concurring:

I join Judge Parks in his statement in his special concurrence.