Jerry FREEMAN, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–93–345.

Court of Criminal Appeals of Oklahoma.

May 27, 1994.

Carolyn L. Merritt, Asst. Public Defender, Oklahoma County Public Defender's Office, Oklahoma City, OK, for appellant.

Susan Brimer Loving, Atty. Gen., Luke Simms, Asst. Atty. Gen., Oklahoma City, OK, for appellee.

## OPINION

STRUBHAR, Judge:

Appellant, Jerry Freeman, was tried by jury for the crime of Murder in the first degree while in the commission of Robbery with a dangerous weapon, in violation of 21 O.S.1991, § 701.7(B), in the District Court of Oklahoma County, Case No. CF–91–3560. The jury found Appellant guilty of Murder in the first degree and recommended punishment of life without parole. The trial court sentenced Appellant accordingly. From this judgment and sentence Appellant perfected his appeal to this Court.

On June 19, 1991 Kathy Belden and Kelley Hendrix went to the Yucatan Liquor Stand in Oklahoma City. As they exited their car Belden noticed two men approaching and told Hendrix, "Here comes two black guys walking down this way." Hendrix and Belden decided to put their purses in the trunk of the car and hurry into the Yucatan. As they were standing at the trunk one of the men stopped while the other continued toward the car, pointed a gun at them and yelled "Move." Hendrix complied and moved to the side of the car, but Belden remained there holding the trunk open. The man repeated his demand to move. Hendrix moved and went to the front of the vehicle while Belden again failed to move. Finally, the man yelled "Move bitch" and walked up to the trunk. Suddenly, the trunk lid fell down on both Belden and her assailant and a gunshot was fired. Belden was mortally wounded by a gunshot to the right temple. The man opened the trunk lid and Belden fell to the ground. The two men fled into a wooded area. Later, Hendrix discovered that their purses were missing.

At trial Hendrix identified Appellant as the man who ordered them to move, pointed a gun at them and approached Belden at the trunk. Hendrix also identified a photograph of Appellant, wearing the same clothing he wore that evening, holding a baggie of Belden's jewelry she kept in her purse.

David Hooten testified that he saw an older model bluish green four door car with extensive body damage containing four or five black males with short hair in the Yucatan parking lot that evening. He noticed the car because it stopped suddenly in front of him with no brake lights. Greg Hix saw a similar car screeching out of the Lakeshore Mall parking lot across the street from the Yucatan around 9:50 p.m.

A few days later Hooten notified the police that he saw a similar car in the area of N.W. 24th and Western. Detective Terhune, of the Oklahoma City police department, responded and located the 1966 Malibu four door at N.W. 24th and Dewey. People in that neighborhood advised Detective Terhune that the car belonged to Robert Snowball. The following day Robert Snowball was interviewed and arrest warrants were issued for Appellant, Gerald Brown, Lee Gray and Cy Rich.[1] Belden and Hendrix's purses were recovered from a dump near the home of Gerald Brown's mother. The purses had been partially burned and submerged in water. However, many forms of identification remained intact.

Nineteen latent fingerprints were recovered from the trunk area of Hendrix's car on June 19. Karen Smith, a fingerprint expert, testified that one set of fingerprints matched Appellant's left index, middle and ring fingers. None of the prints recovered matched any other co-defendant.

Appellant presented no witnesses in his defense during the first stage of the trial. At the second stage of trial, the State alleged the existence of two aggravating circumstances: (1) the murder was committed to

1. All other defendants plead guilty to reduced charges and reduced sentences. Snowball received a five (5) year sentence for accessory to robbery with firearms; Brown received a fifteen (15) year sentence for accessory to murder; Gray received a ten (10) year sentence for accessory to felony murder; and Rich received a five (5) year sentence for accessory to robbery with firearms.

avoid arrest or prosecution; and (2) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.1991, Sec. 701.12(5) & (7). The State produced evidence that Appellant shot Chris Henderson in an unrelated incident two weeks prior to the Yucatan murder. Appellant's cellmate, Gerald Olden, testified Appellant admitted shooting Chris Henderson and Kathy Belden with the same gun. Olden said Appellant was only worried about his fingerprints being found on Hendrix's car. In support of the continuing threat aggravator Olden claimed Appellant made weapons out of pencils and shot them at other inmates. Olden also claimed Appellant threatened to harm him if he testified. In mitigation, Appellant's family testified that he was nineteen years old, a good son and a good father to his three year old little girl. Jerry Freeman, Sr., Appellant's father, testified extensively concerning the tragic murders of Appellant's cousin and best friend witnessed by Appellant. Dr. John Smith, a psychiatrist, testified that Appellant was not likely to commit murder in the future. Appellant's psychological profile indicated he could function well in prison and learn from his experience. All family members testified that Appellant was of benefit to them and asked the jury to spare his life. The jury found the existence of only the "continuing threat" aggravating circumstance.

■ In his first assignment of error Appellant asserts that the trial court erred in refusing to instruct the jury on second degree murder and first degree manslaughter.[2] Appellant contends that the evidence was "undisputed that the shooting was the result of the trunk lid falling on Appellant and Belden, throwing them into the trunk, and causing the gun to discharge". (Brief at p. 12) Appellant argues since there was no evidence that he intended to kill or rob Belden, second degree "depraved mind" murder and first degree manslaughter instructions were warranted. We disagree.

■ Trial courts should instruct the jury on every degree of homicide where the evidence would permit the jury rationally to find the accused guilty of the lesser offense and acquit him of the greater. *Boyd v. State*, 839 P.2d 1363, 1367 (Okl.Cr.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993); *Fowler v. State*, 779 P.2d 580, 585 (Okl.Cr.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990); *Lee v. State*, 700 P.2d 1017, 1019 (Okl.Cr. 1985). However, lesser included offense instructions should only be given when the evidence presented warrants such an instruction. *Id., Hale v. State*, 750 P.2d 130, 136 (Okl.Cr.1988), *cert. denied*, 488 U.S. 878, 109 S.Ct. 195, 102 L.Ed.2d 164 (1988); *Foster v. State*, 714 P.2d 1031, 1039 (Okl.Cr.1986), *cert. denied*, 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). It is the duty of the trial court to determine as a matter of law whether the evidence presented is sufficient to warrant the submission of instructions on a lesser included offense to the jury. *Id., Williams v. State*, 807 P.2d 271, 275 (Okl.Cr. 1991); *James v. State*, 736 P.2d 541, 545 (Okl.Cr.1987), *cert. denied*, 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987). To be entitled to instructions on Murder in the second degree or First Degree Manslaughter, the trial court must find that sufficient evidence was presented to support the conclusion that the homicide was perpetrated without a design to effect death. *Id., See also*, 21 O.S.1991, §§ 701.8(1) and 711(2).

The evidence presented in the instant case was that Appellant approached Hendrix and Belden as they were putting their purses in the trunk, pointed a gun at them and demanded that they move away from their purses. When Belden did not move, Appellant moved toward her. The trunk lid fell and Appellant shot Belden while they were bent over in the trunk. No one observed why the trunk lid fell. Appellant then stole Belden and Hendrix's purses and fled with another man into a wooded area.

■ We do not agree that this evidence supports instructions that Appellant's acts

2. Appellant requested instructions on Murder in the second degree, Manslaughter in the first and Robbery with a dangerous weapon.

were "without any premeditated design to effect death." 21 O.S.1991, §§ 701.8 and 711(2). Direct evidence of intent to commit crimes is oftentimes lacking. *Foster v. State,* 714 P.2d at 1039–40. Consequently, we must rely on circumstantial evidence to determine with what purpose a person acted. *Id.* The circumstantial evidence in this case compels the finding that Appellant intended to rob Belden and that he was clearly engaged in the commission of that felony at the time of her death. The law infers a design to effect death from the fact of killing unless the circumstances raise a reasonable doubt whether such design existed. 21 O.S.1991, § 702. Moreover, a design to effect death sufficient to constitute murder can be formed in an instant. 21 O.S.1991, § 703. In felony murder prosecutions the underlying felony suffices as proof of intent to take away human life so that Appellant's premeditated design to effect death was proven when the. State established his intent to rob Belden. *McAlpine v. State,* 634 P.2d 747, 749 (Okl.Cr. 1981); *Wade v. State,* 581 P.2d 914, 916 (Okl.Cr.1978).

We have held that where there is no evidence to support a lower degree of the crime charged or lesser included offense, it is not only unnecessary to instruct thereon, but the court has no right to ask the jury to consider the issue. *Boyd v. State,* 839 P.2d at 1367–68; *Bennett v. State,* 743 P.2d 1096, 1098 (Okl.Cr.1987); *Hill v. State,* 672 P.2d 308, 312 (Okl.Cr.1983), *cert. denied,* 465 U.S. 1106, 104 S.Ct. 1609, 80 L.Ed.2d 138 (1984). After reviewing the evidence, including the testimony of the eyewitnesses, we do not believe that a rational juror could find that Belden's death was anything but the result of Appellant's intentional acts in furtherance of the robbery. Accordingly, we find no abuse of discretion in the trial court's failure to instruct the jury on Second Degree Murder or First Degree Manslaughter.

■ In his second assignment of error Appellant argues that he was denied a fair sentencing hearing because the State introduced evidence of an unadjudicated shooting incident to prove the aggravating circumstance that there existed "a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society". 21 O.S.1991, § 701.12(7). We are of the opinion that because Appellant was sentenced to life without the possibility of parole at the conclusion of the second stage of the trial, this issue is moot. We note that this Court has repeatedly held that evidence of unadjudicated crimes can be used to prove the aggravating circumstance that a person would be a continuing threat to society. *Paxton v. State,* 867 P.2d 1309, 65 OBJ 120, 124–126 (Okl.Cr.1994); *Walker v. State,* 826 P.2d 1002, 1007 (Okl.Cr.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992); *Johnson v. State,* 731 P.2d 993 (Okl.Cr.1987), *cert. denied,* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987).

In his third assignment of error Appellant asserts prosecutorial misconduct denied him a fair trial. Appellant cites five instances during the second stage closing argument in which he complains that the prosecutor improperly led the jury to believe that the sentence they rendered was merely a recommendation, improperly vouched for the credibility of Gerald Olden, denigrated the mitigation evidence of Dr. John Smith, improperly expressed personal views of justice and engaged in argument calculated to nullify the court's instructions concerning mitigating evidence. Appellant contends that the comments were so highly prejudicial that reversal is warranted.

■ Only one of the comments now complained of was met with a contemporaneous objection. The failure to object results in waiver of the issue on appeal and the Court will review the comments only for fundamental error. *Shelton v. State,* 793 P.2d 866, 872 (Okl.Cr.1990). We must now determine if the State's argument fell within the wide latitude possessed by counsel for both the defendant and the State to discuss freely, from their standpoint, the evidence as well as inferences and deductions arising therefrom. *Id.* at 871; *Romano v. State,* 847 P.2d 368, 380 (Okl.Cr.1993). We will not reverse a conviction for prosecutorial misconduct unless the State's argument is so flagrant and of such a nature as to be prejudicial to the defendant. *Romano,* 847 P.2d at 380.

The comments not objected to all concern the imposition of the death penalty. Appellant argues that the comments minimized the jury's sentencing responsibility, denigrated Appellant's mitigating evidence and nullified the trial court's mitigation instructions. In light of the sentence Appellant received, it is difficult to conclude that the comments had any bearing on the outcome and we find that the comments read in context did not deprive Appellant of a fair trial. *Romano*, 847 P.2d at 380.

Appellant argues that the prosecutor improperly vouched for the credibility of Gerald Olden, Appellant's cellmate, when the prosecutor said, "That's how you know Gerald Olden is telling the truth". Defense counsel objected and the trial court overruled the objection stating, "[t]he jury can rely on its own memory as to the evidence".

In *U.S. v. Bowie*, 892 F.2d 1494 (10th Cir.1990), the Tenth Circuit enunciated a test, we find appropriate, to determine if the State improperly vouched for the credibility of its witnesses. "Argument ... is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *Id.* at 1498. In the instant case the prosecutor neither personally assured the jury that Gerald Olden could be believed nor implied that there was omitted evidence which would support Olden's testimony. Instead, the prosecutor argued Gerald Olden could be believed despite his criminal record because other evidence and testimony corroborated his testimony. Accordingly, we find this assignment of error without merit.

In his fourth assignment of error Appellant claims that the trial court erred in permitting jurors to ask questions of witness-es at the conclusion of their testimony. Appellant contends that the questions were submitted to seek out additional information rather than to clarify any confusion. Twenty-six questions were submitted by jurors and the trial court allowed eight questions to be asked. Defense counsel objected to this procedure and specifically objected to the question propounded to Kellee Tyler. Kellee Tyler was asked to demonstrate how Appellant held the pistol when he shot Chris Henderson.

We recently examined the propriety of trial judges questioning witnesses in *Arnold v. State*, 803 P.2d 1145, 1149 (Okl.Cr.1990), and reaffirmed our position that a trial judge has the right to ask any witness questions which will tend to elicit the truth so long as the judge does not communicate her view of the issues to the jury.[3] In *Krause v. State*, 75 Okl.Cr. 381, 132 P.2d 179, 182 (1942), we addressed the propriety of jurors asking witnesses questions for the purpose of clarification. We held such questioning permissible and committed the matter to the discretion of the trial court. *Id.* In *Krause* and later in *Smith v. State*, 81 Okl.Cr. 412, 165 P.2d 381, 385 (1946)[4], we cautioned trial courts to be careful in permitting the jurors to ask questions because incompetent and prejudicial evidence could be brought before the jury.

In the present case the trial court invited written questions from the jury at the conclusion of each witness' testimony. The trial judge and counsel then reviewed the questions in chambers where the trial court ruled on the admissibility of each question. The trial court then posed the admissible questions to the witness. We note that the trial court carefully reviewed each question and decided many of the questions had been asked and answered or were inappropriate for the witness. These procedures instituted by the trial court assuage our concerns in *Krause* and *Smith*.

3. *See also, Richmond v. State*, 456 P.2d 897, 900 (Okl.Cr.1969); *Tilford v. State*, 437 P.2d 261 (Okl.Cr.1967); *McGowan v. State*, 380 P.2d 274, 277 (Okl.Cr.1963); *Stanley v. State*, 94 Okl.Cr. 122, 230 P.2d 738 (1951); *Smith v. State*, 81 Okl.Cr. 412, 165 P.2d 381 (1946); *Schmitt v. State*, 57 Okl.Cr. 102, 47 P.2d 199 (1935).

4. The petition for rehearing was sustained and this opinion withdrawn because the Court found the verdict too indefinite and reversed and re-. manded the cause for new trial. *See, Smith v. State*, 83 Okl.Cr. 392, 177 P.2d 523 (1947).

We are of the opinion that the trial court did not overstep its permitted latitude in allowing jurors to question witnesses for clarification; nor, do we feel the record reflects that the juror's questions prejudiced Appellant. Therefore, this assignment of error is denied.

In his fifth assignment of error Appellant argues that the trial court's instruction allowed the jury improperly to consider victim sympathy when deliberating the appropriate sentence. The trial court modified OUJI–CR 442 and instructed the jury as follows:

All the previous instructions given you in the first part of this trial apply where appropriate and must be considered together with these additional instructions. The only exception is that, unlike what you were instructed in the first stage of this trial, you may in you discretion, consider sympathy as a factor in your deliberations and then determine whether or not you should give any weight to such factor under all the evidence you have heard in both the first and second stages.

Appellant claims this instruction could be construed as sanctioning sympathy for the victim instead of the defendant. Appellant relies on cases in which this Court has held that victim sympathy is not a proper consideration for juries and ordered prosecutors to refrain from argument calculated to evoke sympathy for crime victims. *Langley v. State*, 813 P.2d 526, 531 (Okl.Cr.1991); *Jones v. State*, 738 P.2d 525, 529 (Okl.Cr.1987). We must now reexamine this rule in light of the Supreme Court's opinion in *Payne v. Tennessee*, 501 U.S. 808, ——, 111 S.Ct. 2597, 2608–09, 115 L.Ed.2d 720, 736 (1991).

In *Payne*, the Supreme Court held that the Eighth Amendment does not prohibit the admission and consideration of victim impact evidence during capital sentencing proceedings. *Id.* In so holding the Court stated that, "[a] State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed". *Id.*

We, too, find that "victim impact" evidence relating to the personal characteristics of the victim and the emotional impact of the crime on the victim's family is a relevant consideration of Oklahoma capital sentencing juries. *See also*, 22 O.S.Supp.1992, § 984 et seq.

We now address whether the trial court's instruction allowed the jury to consider impermissible criteria in assessing punishment rendering the sentence unreliable. It is well settled that this Court will not interfere with a judgment as long as the *instructions fairly and accurately state the applicable law*. *Sadler v. State*, 846 P.2d 377, 386 (Okl.Cr. 1993); *Kinsey v. State*, 798 P.2d 630, 633 (Okl.Cr.1990); *Coulter v. State*, 721 P.2d 818 (Okl.Cr.1986); *Langdell v. State*, 657 P.2d 162 (Okl.Cr.1982). Sympathy is defined as "[t]he act of or capacity for sharing or understanding the feelings of another person" or "[p]ity or sorrow for the distress of another". *Webster's II New Riverside University Dictionary*, (2d ed. 1988). After considering the instructions as a whole, we conclude that the trial court's instruction properly advised the jury that it could consider not only all the evidence introduced in mitigation but also all the "victim impact" evidence in assessing punishment. Hence, this proposition is denied.

In his sixth assignment of error Appellant asserts he was denied due process of law because the trial court denied his motion to allocute. Appellant contends that due process requires criminal defendants be permitted to allocute before sentencing if they so request. *Boardman v. Estelle*, 957 F.2d 1523 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). Appellant elected not to take the stand in both stages of trial, but filed a motion asking the court to allow him to make an unsworn statement to the jury before it retired to deliberate his sentence.

Allocution is defined as the "[f]ormality of court's inquiry of prisoner as to whether he has any legal cause to show why judgment should not be pronounced against him on verdict of conviction". *Black's Law Dictionary* (5th ed. 1983). The right of allocution in Oklahoma is codified at 22 O.S.1991, § 970.

22 O.S.1991, § 970 provides:

When the defendant appears for judgment, he must be informed by the court, or by the clerk under its direction, of the nature of the indictment or information, and his plea and the verdict, if any thereon, and must be asked whether he has any legal cause to show why judgment should not be pronounced against him.

The trial court specifically asked Appellant at formal sentencing, "... do you or your attorney, Mr. Freeman, have anything more to say, or do you know of any reason why you should not be sentenced now?" (Sent. at 4) Appellant responded, "No, sir." Even though the trial court denied Appellant's motion to allocute, the court gave Appellant the opportunity to do so. We find no violation of 22 O.S.1991, § 970. Accordingly, this assignment of error is denied.

█ In his seventh assignment of error Appellant claims the trial court erred in failing to hold an in camera hearing to determine the reliability of Gerald Olden's testimony. Appellant argues that because jailhouse informants are under such pressure and offered inducements to cooperate with the state, their testimony should be scrutinized in camera to determine its reliability. Appellant cites *D'Agostino v. State*, 107 Nev. 1001, 823 P.2d 283 (1991), *cert. denied*, — U.S. —, 113 S.Ct. 111, 121 L.Ed.2d 68 (1992) in support of his position.

In *D'Agostino* the Supreme Court of Nevada vacated the defendant's death sentence and remanded the case for resentencing because it found the penalty phase was contaminated by a jailhouse informant who testified that the defendant admitted previously killing two other individuals. *Id.* at 284–85. The court noted the absence of detail as to time, place and identity of victim in the informant's testimony. The court concluded that there was no way for the defendant to defend himself against such unverifiable accusations. *Id.* To protect defendants from these kind of prejudicial bald assertions, the court held that trial judges must first determine that the details surrounding these alleged confessions supply sufficient indicia of reliability or find corroborating evidence before admitting the testimony during the penalty phase of trial. *Id.*

In the instant case Gerald Olden's testimony was corroborated by several witnesses. Olden's prior criminal record and plea bargain were before the jury. The jury was also instructed that evidence had been introduced to show that Olden's testimony was untruthful or not believable and it was their decision to determine its worth. Since the concerns of the Nevada court are not present in this case, we decline to adopt its procedural safeguards at this time.

█ In his eighth assignment of error Appellant contends that the Legislature and this Court have failed to sufficiently tailor the aggravating circumstance of "continuing threat to society". Appellant contends that the Court's interpretation of this aggravator is subjective and fails to narrow the category of persons convicted of murder who may be sentenced to death. *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

The constitutionality of this aggravating circumstance has been upheld by the United States Supreme Court in *Barefoot v. Estelle*, 463 U.S. 880, 896–899, 103 S.Ct. 3383, 3396–3397, 77 L.Ed.2d 1090 (1983), and by this Court in *Williamson v. State*, 812 P.2d 384, 410 (Okl.Cr.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992); *Munson v. State*, 758 P.2d 324, 335 (Okl.Cr. 1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *Castro v. State*, 745 P.2d 394, 407 (Okl.Cr.1987), *cert. denied*, 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988); *Smith v. State*, 737 P.2d 1206, 1215 (Okl.Cr.1987), *cert. denied*, 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); *Fisher v. State*, 736 P.2d 1003, 1009 (Okl.Cr.1987), *affrm'd on rehearing*, 739 P.2d 523 (Okl.Cr. 1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988), *reh. denied*, 487 U.S. 1246, 109 S.Ct. 3, 101 L.Ed.2d 955 (1988); *Walker v. State*, 723 P.2d 273, 285 (Okl.Cr.1986), *cert. denied*, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986); *Newsted v. State*, 720 P.2d 734, 739 (Okl.Cr.1986), *cert. denied*, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986); *VanWoundenberg v. State*, 720 P.2d 328, 337 (Okl.Cr.1986), *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93

L.Ed.2d 395 (1986); *Ross v. State,* 717 P.2d 117, 123 (Okl.Cr.1986), *affrm'd,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

After reviewing these cases and the application of this particular aggravating circumstance, we reaffirm our prior holdings that the phrase "the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society" is clear and does not require further definition. The phrase directs the jury to examine the accused's conduct in the offense for which he was just convicted as well as other relevant conduct relating to the safety of society as a whole. *Williamson,* 812 P.2d at 410.

■ Finally, Appellant claims that his sentence of life without parole for first degree murder is shockingly excessive in light of the facts and circumstances of this case. Appellant requests that we give great consideration to his youth and his lack of prior convictions.

Our review of the appropriateness of Appellant's sentence is guided by well established principles. We must grant substantial deference to the legislature's determination of sentencing limits. *Maxwell v. State,* 775 P.2d 818, 820 (Okl.Cr.1989). It is not for us to substitute our judgment for that of the sentencing court as to the appropriateness of a particular sentence. *Id.* This Court has consistently held that where the punishment is within the statutory limits, the sentence will not be modified unless under all the facts and circumstances of the case it is so excessive as to shock the conscience of the Court. *Luna v. State,* 829 P.2d 69, 74 (Okl.Cr.1992). Appellant's sentence is well within the limits of 21 O.S.1991, § 701.9(A) since life without the possibility of parole is considered an intermediate level of punishment for the offense of First Degree Murder. *Allen v. State,* 821 P.2d 371, 375 (Okl.Cr.1991). The evidence showed that Appellant was involved in a shooting incident just twelve days prior to Belden's murder. Additionally, the jury found that Appellant constituted a "continuing threat". We find the evidence warranted the jury's decision to sentence Appellant to life without parole and therefore, we decline to modify his sentence.

Accordingly, the judgment and sentence is AFFIRMED.

LUMPKIN, P.J., JOHNSON, V.P.J., and LANE, J., concur.

CHAPEL, J., concurs in result.