The STATE of Ohio, Appellee,

v.

PURCELL, Appellant.

[Cite as *State v. Purcell* (1995), 107 Ohio App.3d 501.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940051.

Decided Nov. 22, 1995.

502

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Assistant Prosecuting Attorney, for appellee.

*Deardorff & Haas* and *Loren S. Haas*, for appellant.

HILDEBRANDT, Judge.

Defendant-appellant Steven Purcell appeals from the judgment of the Hamilton County Court of Common Pleas, sitting with a jury, convicting him of murder and an accompanying gun specification. On appeal, he advances four assignments of error. We find no merit in these assignments of error and, therefore, we affirm the judgment of the trial court.

Appellant does not dispute that on March 20, 1993, he shot William Wieland four times in the head with a handgun. Nor does he dispute that Wieland died as a result of the gun shots to his head. However, appellant does argue that he is not guilty of murder.

Appellant's girlfriend, Patricia Ann Nieman, lived in the same apartment building as Wieland. Nieman was frightened by Wieland because of the way he looked at her, because he followed her when she walked to her car, and because he verbally indicated his sexual interest in her. Nieman testified that one night she awoke to find Wieland standing by her bed. Because of Wieland's actions, Nieman purchased a handgun.

Nieman reported Wieland's advances to appellant. She also informed appellant that she had purchased a handgun. Although appellant was initially displeased with Nieman owning a handgun, he eventually purchased ammunition for the gun, loaded it and occasionally carried it with him.

On the evening of March 19, 1993, appellant was in Vince's Other Place ("Vince's"), a local bar, with Nieman and Nieman's brother. Wieland entered the bar, approached appellant and physically assaulted appellant. Wieland was evicted from the bar. Later, according to Nieman, Wieland peered through a window into the women's restroom at Vince's while she was in there.

Later that evening, Kimberly Ann Lintz and Melissa Weaver joined appellant, Nieman and Nieman's brother at their table in Vince's. Nieman told them about the events earlier in the evening involving Wieland. When the bar closed, the group decided to return to Nieman's apartment. The women travelled in one car, the men in another.

According to prosecution witnesses, the evening then went as follows. As the women approached the apartment building, they noticed appellant and Wieland engaged in a conversation. Nieman lunged at Wieland and scratched his face. Wieland began yelling at Nieman and instructing everyone else to keep "that crazy bitch" away from him. At this point, Lintz tried to push Wieland up the steps to his apartment, but he resisted, saying, "I'm not going upstairs until she leaves me alone." Weaver, Nieman, Nieman's brother and appellant went in to Nieman's apartment. While inside, appellant stated, "[i]f he doesn't shut up, I'm going to shut him up." Appellant calmly left the apartment and shot Wieland three times in the head. Wieland fell on the steps and appellant shot him once more in the mouth. Appellant then stated, "you're not saying shit now."

Nieman testified for the defense and related a different series of events immediately preceding the shooting. According to Nieman, as she entered her apartment building with Weaver and Lintz, Wieland attacked her, grabbed her by the hair and threatened to kill her. At that point, appellant shot and killed Wieland.

After appellant shot Wieland, Weaver and Lintz returned to Weaver's apartment and called the police. Police officer Jeff Armontraut responded to the call and escorted the women back to Nieman's apartment building. As Armontraut was preparing to enter the building, he observed appellant walking toward him. Armontraut asked appellant to drop the items he was carrying and put his hands on the car. As appellant did this, he calmly stated, "I shot him, I did it." He was then arrested and charged with murder in connection with the death of Wieland. In a statement to the police, appellant admitted that he had shot Wieland and stated that he got the gun out of Nieman's apartment.

■ In his first assignment of error, appellant contends that the trial court erred in overruling his motion for a mistrial and in permitting the prosecution to present expert testimony regarding his state of mind at the time of the crime. We find no merit in this assignment of error.

At trial, appellant pursued a theory of self-defense based upon Nieman's testimony and the testimony of Dr. George Lackemann, a psychiatrist with the Veteran's Administration Hospital. Lackemann testified that he had treated appellant between October 1990 and October 1991 and that he had diagnosed appellant as suffering from posttraumatic stress disorder resulting from appellant's service in the Vietnam war. According to Lackemann, posttraumatic stress disorder is "an anxiety disorder that has psychological and physical symptoms which occur after a person undergoes an overwhelming stress." Lackemann testified that appellant suffered from this disorder at the time of the shooting, that this disorder and the level of stress caused by the confrontation with Wieland would be capable of causing a "hyperarousal" in appellant, and that this

would cause appellant to have the "misperception" that either he or his girlfriend was in threat of imminent danger from Wieland. He further testified that although appellant may have acted as though he "was still in touch with reality, [that] wouldn't necessarily negate the likelihood of there being a post-traumatic stress reaction at that time." Lackemann specifically testified that, in his opinion, appellant was not legally insane at the time of the shooting.

In rebuttal, the prosecution presented the testimony of Dr. Nancy Schmidt-goessling, a court-appointed psychologist. Schmidtgoessling agreed with the diagnosis that appellant suffered from posttraumatic stress disorder. She testified that posttraumatic stress disorder is characterized by flashbacks to the trauma that preceded the disorder. According to Schmidtgoessling, these flashbacks cause the person suffering from the disorder to "lose touch with reality." However, she testified that, in her opinion, appellant was not suffering from a posttraumatic stress disorder flashback that would have caused him to lose touch with reality at the time of the shooting.

Appellant objects to Schmidtgoessling's testimony regarding whether he had "lost touch with reality" when he shot Wieland. He argues that the admission of this testimony should have prompted a mistrial because evidence of his state of mind at the time of the crime was introduced when that was not an issue in the case. We disagree.

■ Appellant presented a theory of self-defense at trial. In Ohio, to prove self-defense it must be established that the person asserting this defense had "a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force." *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, paragraph two of the syllabus. Thus, Ohio has adopted a subjective test in determining whether a defendant acted in self-defense. The defendant's state of mind is crucial to this defense. *State v. Koss* (1990), 49 Ohio St.3d 213, 551 N.E.2d 970; *State v. Smith* (1983), 10 Ohio App.3d 99, 10 OBR 122, 460 N.E.2d 693; *State v. Thomas* (1983), 13 Ohio App.3d 211, 13 OBR 261, 468 N.E.2d 763.

Appellant's defense at trial was that because he suffered from posttraumatic stress disorder he tended to overreact in stressful situations, and that because of this disorder he had an honest belief that he was in imminent danger of death or great bodily harm from Wieland. He, therefore, argues that he shot Wieland in self-defense. The prosecution was well within its bounds to present expert testimony that although appellant did suffer from posttraumatic stress disorder, that disorder was not the cause of his inappropriate behavior and did not cause him to "lose touch with reality" with respect to his belief of imminent danger of death or great bodily harm.

Appellant's state of mind was in issue in this case as to whether he believed that he was in imminent danger of death or great bodily harm and whether he believed that his only means of escape from such danger was in the use of deadly force, thereby justifying the shooting as an act of self-defense. See *State v. Koss, supra.* Therefore, the trial court did not err in permitting the prosecution to introduce evidence as to appellant's state of mind at the time he shot Wieland. Furthermore, the introduction of such testimony did not warrant the granting of a mistrial.

■ In his second assignment of error, appellant contends that he was denied effective assistance of trial counsel. Appellant argues that his trial counsel rendered ineffective assistance in withdrawing his defense of not guilty by reason of insanity.

■ To establish a claim of ineffective assistance of counsel, the burden is on the defendant to show that counsel's performance was deficient and that such deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Johnson* (1986), 24 Ohio St.3d 87, 24 OBR 282, 494 N.E.2d 1061. To show that a defendant has been prejudiced by counsel's allegedly deficient performance, the defendant must demonstrate that there exists a reasonable probability that, were it not for counsel's error, the result of the trial would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. In reviewing claims of ineffective assistance of counsel, courts afford great deference to counsel in areas involving strategic and tactical decisions which are made during the trial. *State v. McGrady* (Sept. 2, 1987), Hamilton App. No. C–860316, unreported, 1987 WL 16482.

The findings of the experts retained or appointed in this case uniformly indicate that appellant suffered from posttraumatic stress disorder, but that he was not insane according to Ohio law. We cannot say that trial counsel was ineffective in failing to pursue a defense of not guilty by reason of insanity where that defense was not supported by expert testimony. See *State v. Wong* (1994), 95 Ohio App.3d 39, 641 N.E.2d 1137.

Trial counsel's decision to pursue a defense of self-defense and to withdraw a defense of not guilty by reason of insanity did not constitute deficient performance by appellant's counsel. We, therefore, overrule the second assignment of error.

■ In his third assignment of error, appellant contends that the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal and in entering a verdict not supported by sufficient evidence. In his fourth assignment of error,

appellant contends that his conviction was contrary to the manifest weight of the evidence. We overrule these two assignments of error.

 An entry of acquittal pursuant to Crim.R. 29(A) is improper "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. In ruling on a motion for judgment of acquittal, a court must view the evidence in a light most favorable to the state. *State v. Evans* (1992), 63 Ohio St.3d 231, 586 N.E.2d 1042.

Appellant was convicted of murder in violation of R.C. 2903.02, which provides that "[n]o person shall purposely cause the death of another." The evidence presented at trial, when viewed in a light most favorable to the state, was such that reasonable minds could reach different conclusions as to whether appellant purposely caused the death of Wieland beyond a reasonable doubt. The trial court, therefore, did not err in denying appellant's motion for judgment of acquittal.

 Appellant also argues that his conviction was not supported by sufficient evidence and that his conviction was contrary to the manifest weight of the evidence. Where substantial evidence is offered by the state in support of all of the elements of the offense charged, and if such evidence is of sufficient probative value to sustain a conviction, the reviewing court will not reverse the judgment of the trial court on the sufficiency or weight of the evidence. *State v. Barnes* (1986), 25 Ohio St.3d 203, 25 OBR 266, 495 N.E.2d 922.

In this case, where there was evidence that appellant shot Wieland in the head several times, that appellant did not shoot Wieland while suffering a post-traumatic stress disorder flashback, that appellant did not shoot Wieland because of an honest belief that he was in imminent danger of death or serious physical harm, and that Wieland died as a result of the gunshot wounds to his head, there was substantial evidence presented upon which the jury reasonably concluded that all the elements of murder were proven beyond a reasonable doubt. See *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. Therefore, appellant's conviction is supported by sufficient evidence.

Although testimony was presented that appellant, because of his posttraumatic stress disorder, shot Wieland because he honestly believed that he was in imminent danger of death or serious physical harm, the jury was free to disbelieve this evidence and to believe the evidence presented by the prosecution. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. We do not find that the jury lost its way in resolving conflicts in the evidence or that the jury created such a manifest miscarriage of justice that appellant's

conviction must be reversed and a new trial ordered. See *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717. Therefore, appellant's conviction is not contrary to the manifest weight of the evidence.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GORMAN, P.J., and SUNDERMANN, J., concur.