OPINION
Defendant-appellant Charles L. Marshall ("appellant") appeals from his conviction for two counts of aggravated robbery, nine counts of kidnapping, and one count of felonious assault.
Appellant assigns the following errors for review:
 I. THE COURT ERRED IN SENTENCING APPELLANT TO FOUR YEARS CONSECUTIVE FOR THE MANDATORY GUN SPECIFICATION IN COUNTS 5, 11 AND 12.
 II. IT WAS ERROR FOR APPELLANT TO BE CONVICTED OF BOTH KIDNAPPING AND AGGRAVATED ROBBERY, SUCH OFFENSES BEING ALLIED OFFENSES OF SIMILAR IMPORT.
 III. APPELLANT WAS DENIED DUE PROCESS BY THE COURT DENYING ACCESS BY APPELLANT'S INDEPENDENT PSYCHIATRIC CLINIC AND CPI WHO PRESENTED REPORTS AND TESTIMONY BASED PARTIALLY ON SUCH INFORMATION.
 IV. IT WAS PREJUDICIAL ERROR FOR THE COURT TO ALLOW TESTIMONY BY A WITNESS THAT SHE FOUND A PROBATION PAPER WITH APPELLANT'S NAME ON IT.
 V. APPELLANT HAD INEFFECTIVE ASSISTANCE OF COUNSEL IN THE LOWER COURT.
Finding the first assignment of error to have merit, the judgment of the trial court is affirmed in part, reversed in part and remanded for re-sentencing.
 I.
On October 22, 1996, Briana Lee was sweeping the floor in Long John Silver's Restaurant in Maple Heights. As it was after 9:30 p.m., the front doors were locked and the restaurant Was closed except f or the take-out window. Lee heard someone come in the restaurant although she did not know where the person had entered the building. The person, appellant, asked Lee where her manager was. Lee replied the manager was in the back and continued sweeping. Lee turned around to ask appellant who he was. Appellant said not to mind and told Lee to accompany him to the back. Appellant held a gun in his hand. Lee and appellant walked towards the back of the restaurant. Two other employees were in the cooking area. Appellant told those employees to come to the back of the room with him. Appellant made the employees kneel on the floor near the stockroom. Appellant went toward the freezer where assistant manager Vershoun Jackson was counting food. A second unidentified male appeared at that point. This man never said anything but followed appellant's directions.
Standing in the freezer, Jackson heard the door behind her open. She turned to face appellant who was holding a gun to Jackson's face. Appellant was dressed in black with a camouflage jacket on and a black skull cap. His face was uncovered. Appellant told Jackson to come out of the freezer. Jackson saw the other three employees kneeling on the floor with the second man standing watch over them. Jackson surmised the men had entered by way of the drive-thru window as all the other doors were locked. Appellant took Jackson at gunpoint to the safe and made Jackson open it and remove the money. Appellant reached over Jackson from where she knelt on the floor in front of the safe and began rummaging through the drawers. Appellant then noticed the top part of the safe which was on a time lock. Jackson had activated the time lock earlier in anticipation of closing. The safe would open ten minutes after a key started the lock. Appellant tapped the dial with his gun, saying he wanted that money too. Jackson opened that part of the safe and gave appellant the money. Jackson then was ordered into the freezer with the other three employees. Appellant told the employees not to leave the freezer until he was gone.
Once in the freezer, the employees locked the door from the inside. Jackson pressed the panic button. After a few minutes, Jackson opened the freezer door and sprinted the short distance to the office where her purse was located. Jackson returned to the freezer, locking it once again. Jackson removed her cellular phone from her purse and telephoned the police. After a few minutes, the workers kicked open the delivery entrance to the freezer and exited into the back parking lot where they were met by the police. The robbers had escaped with nine hundred ninety-eight dollars ($998.00).
On January 23, 1997, appellant returned to the same Long John Silver's Restaurant accompanied by Robert Martin. Tamara Mason stood at her register counting out the drawer shortly after 5:00 p.m. She observed appellant enter the restaurant and crouch by the condiment stand near the front door and pull a black hat or mask over his head and face. Martin pressed up against the wall near the door as if to hide. Appellant jumped up when he noticed a customer eating in a booth. Appellant pulled out a gun and told the customer to get up and walk to the back. It was then that Mason realized the store was being robbed. Appellant walked behind the counter and told Mason and fellow cashier Dana Hill to go to the back. Appellant said they were going to the freezer.
As soon as manager Vershoun Jackson saw a gun being held on a customer, she knelt down and alerted the police by pressing a security pendant worn around her neck. Appellant looked at Jackson and asked what she was doing. Jackson recognized appellant's eyes as those of the October robber. Appellant recognized Jackson as well and stated he would have to kill Jackson because she knew who he was. Appellant came around to the kitchen area and motioned for Jackson and another employee, Janis Presley, to follow him. Appellant took the employees to the freezer once again. Appellant asked if anyone had a cellular phone and patted them down. Jackson remained with appellant while the other three women were placed in the freezer and the door was closed. Jackson was led to the safe. Appellant told Jackson she knew the routine. Appellant repeated his threat to kill Jackson. Jackson slowly opened the safe to try and give the police time to arrive. Appellant became impatient so Jackson opened the safe. Appellant knelt down on the ground and threw a pillow case at Jackson while telling her to fill it. Appellant shoved Jackson aside and began putting money in himself. Jackson stood up and saw a police car enter the parking lot. Appellant then tapped his gun on the top of the safe and said he wanted all of the money and to start the time lock. As Jackson started the time lock, appellant grabbed a cash drawer from the counter and began taking money from it. Appellant looked out the window and saw the police. Appellant pointed his gun at Jackson and said he would kill her for calling the police. Appellant glanced away and told his cohort five-oh, five-oh, which means police. Jackson ran out the front door and escaped.
Maple Heights police officer Lanel Hunter was removing his shotgun from his police vehicle parked at Long John Silver's when he saw the rear door open and two men emerge. One was dressed in black with a neoprene mask on while the other wore khaki pants and a red sweat shirt. Officer Hunter called "Halt, police" and saw the suspects hesitate and then run across the slick surface of the parking lot. The man wearing black, appellant, stopped and turned toward the police officer. Appellant assumed a Weaver stance and brought his arm up and deliberately fired at Officer Hunter. Unhurt, Officer Hunter dove back into his vehicle but rolled out again when no further shots were fired. Hunter again yelled at the men to stop. Appellant turned as if to shoot and Officer Hunter fired his shotgun at appellant. Appellant and the other suspect, Robert Martin, continued to run. Officer Hunter chased the men to a home on Centuryway and saw the suspects enter the house.
Other police arrived on the scene and surrounded the house. Darnell Weeks, a resident of the home, exited and was apprehended briefly by police. Suspect Robert Martin left next and was arrested after a short struggle. The police searched the house for thirty to forty-five minutes before discovering appellant in the basement. Appellant was between the wall and a shower stall, buried in dirty laundry. Appellant's neoprene mask was in his back pocket and his gun was found nearby in a hamper.
As the police were escorting appellant out of the house, appellant asked that his head be covered so that the news media cameras could not take his picture. Appellant did not want his mother to see him on television. Appellant spoke English well at that point and had no problem understanding the officers. After appellant was placed in a police vehicle, he asked Officer Gerald Prusha if he knew that aggravated burglary carried an eight-year mandatory sentence. Police later discovered several business cards, a driver's license, work identification card and two social security cards all in appellant's name underneath the driver's seat of the police car.
Appellant became uncooperative at the police station. Appellant claimed to be a juvenile and identified himself as Leone Gomez. Appellant bit his fingertips before his fingerprints were taken, apparently trying to chew the skin off. Appellant said he was homeless. Appellant refused to look at the camera when the police were photographing him. Appellant would put his head up or down or let his body go limp. Appellant claimed the camera would take his soul. Appellant began to have problems understanding and speaking English. Instead, appellant seemed to be speaking Spanish. The police soon discovered appellant's true name and age.
Appellant was charged with nine counts of kidnapping, nine counts of aggravated robbery, and one count of felonious assault on a peace officer. Appellant entered pleas of not guilty and not guilty by reason of insanity. The trial court ordered an evaluation of appellant by a court-appointed psychiatrist. Hearings on competency and sanity were held at which the psychiatrist, Dr. Clara Bozievich, testified that appellant was both competent and sane. Defense counsel withdrew the insanity plea after the trial court refused to grant a continuance so that a defense psychiatrist could review the prosecutor's file and police reports. The case proceeded to trial. The jury convicted appellant of two counts of aggravated robbery, nine counts of kidnapping, and one count of felonious assault.
 II.
Appellant's first assignment of error challenges the trial court's sentencing of appellant to two separate consecutive terms for the gun specifications for three of the counts. Counts five and twelve charged appellant with aggravated robbery with a one-year gun specification under R.C. 2941.141 and a three-year gun specification under R.C. 2941.145. The same two gun specifications were set forth in the indictment in count eleven for felonious assault. The trial court imposed both the gun specifications consecutively for a sentence of four years for these three counts.
R.C. 2941.141(B) states that: "Imposition of a one-year prison term upon an offender under division (D)(1)(a)(i) of section2929.14 of the Revised Code is precluded if a court imposes a three-year or six-year mandatory prison term on the offender under that division relative to the same felony." R.C. 2941.145(B) also forbids the imposition of a three-year mandatory prison term if a court also imposes a one-year or six-year mandatory prison term on the offender for the same offense. As the trial court imposed both a one-year and a three-year mandatory prison term for each of the three offenses, appellant's sentence for these gun specifications was error. Either the one-year sentence pursuant to R.C. 2941.141 or the three-year term under R.C.2941.145 may be imposed for the same count. This case is remanded for re-sentencing.
Appellant's first assignment of error has merit.
 III.
Appellant's second assignment of error argues that the trial court erred by convicting him of both kidnapping and aggravated robbery. Appellant contends the crimes are allied offenses of similar import.
R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In Newark v. Vazirani (1990), 48 Ohio St.3d 81, syllabus, the
Supreme Court of Ohio held:
 Under R.C. 2941.25 a two-tiered test must be undertaken to determine whether two or more crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendants conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
Appellant failed to raise this alleged error at the time of trial and, therefore, has waived appellate review of this issue absent plain error. State v. Comen (1990), 50 Ohio St.3d 206. However, this court may review claims of plain error notwithstanding waiver below. State v. Broom (1988), 40 Ohio St.3d 277. Appellate courts have exercised discretion under Crim.R. 52(B) to review cases involving allied offenses of similar import. State v. Lang (1995),102 Ohio App.3d 243. Plain error is an obvious error or defect in the trial court proceeding which affects a substantial right, affecting the outcome of the trial. State v. Williams (1996), 79 Ohio St.3d 1, 12.
State v. Logan (1979), 60 Ohio St.2d 126, established the test to be applied when determining if kidnapping and another crime are allied offenses of similar import. Logan held:
 In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25 (B), this court adopts the following guidelines:
 (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
 (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.
R.C. 2905.01(A)(2) defines kidnapping as the removal of a person by force, threat, or deception from the place where the other person is found or the restraint of the liberty of the other person in order to facilitate the commission of any felony or flight thereafter. The elements of aggravated robbery are set forth in R.C. 2911.01(A)(1) which forbids anyone from attempting or committing a theft offense while having a deadly weapon on or about the offender's person or under the offender's control and either displaying or brandishing the weapon or indicating that the offender possesses the weapon or uses it.
In State v. Trammell (July 13, 1995), Cuyahoga App. No. 67834, unreported, this court found sufficient evidence of a separate animus to support separate convictions for kidnapping and aggravated robbery. In Trammell, the defendant entered a service station and held a gun to the manager's head. The defendant then tied the manager's hands and feet and dragged her to the bathroom, closed the door, and demanded the manager stay there. The defendant threatened to shoot the manager if she did not stay in the bathroom. The Trammell court found that the confinement of the manager was secretive, the restraint prolonged, and the movement of the victim to be substantial.
In facts in State v. Burch (Sept. 29, 1995), Montgomery App. No. 14488, unreported, are similar to those in the instant case. In Burch, the defendant entered an Old Country Buffet in Dayton. The restaurant was closed and several employees were cleaning. Burch grabbed one employee and made her walk to the back of the restaurant at gunpoint. All of the employees were ordered to the back of the restaurant and into a small office where the manager was told to open a safe. After receiving a bank bag full of cash, Burch told the employees to stay in the office and not open the door and then he left. After a short time, the manager called the police from the office. The Second District Court of Appeals rejected Burch's contention that his convictions for aggravated robbery and kidnapping were allied offenses of similar import. The court examined the elements of the two charged offenses with reference to the facts of the case. The court found that the removal of the first employee by gunpoint from the front of the restaurant to the office area in the back satisfied the offense of kidnapping as the employee was removed by force and threat and restrained of her liberty. The offense of robbery was committed by demanding the manager open the safe and taking the money. Under these facts, the court determined that the commission of aggravated robbery did not necessarily result in the commission of kidnapping. Therefore, the two offenses were not allied.
In both aggravated robberies of which appellant was convicted, he entered Long John Silver's and forced the employees to the back area at gunpoint and then into the freezer where the employees were told to wait until appellant left the restaurant. While the other employees were restrained, appellant directed the manager, Vershoun Jackson, to open the safe. Jackson also was forced into the freezer during the October robbery after appellant received the money. The confinement of the employees was secretive as they were forced into the freezer, the restraint was prolonged, and the movement of the employees from different areas of the restaurant to the freezer was substantial. Applying the holding of Logan to the facts found in the instant case, this court holds that appellant's convictions for aggravated robbery and kidnapping were not allied offenses of similar import.
Appellant's second assignment of error lacks merit.
 IV.
In his third assignment of error, appellant contends he was denied due process when the trial court did not allow appellant's psychiatrist access to the prosecutor's file and police reports. Appellant reguested a continuance in order to allow his psychiatrist time to review the material. The psychiatrist had not prepared a report on appellant's sanity at the time the offenses were committed because he wished to review the information.
The trial court denied appellant's motion for a continuance after noting that a full statement of the evidence for the aggravated robbery case was in the file, giving anyone reading the file more than enough facts to prepare a report. The trial court observed that the jury was waiting to be seated and the case had been planned for months.
This court has reviewed the reports of the court-appointed psychiatrist. One report was prepared before she read the prosecutor's file and the police reports and the other report was written after this information was considered. The information, along with other factors, strengthened the psychiatrist's belief that appellant was malingering or faking his symptoms of insanity. Appellant displayed no indications of multiple personalities until after his arrest when he gave police a false name and pretended to only speak and understand Spanish. Shortly before, appellant stuffed his identification under the seat in the police car and asked the officer to shield his face from television cameras so his mother would not see him. Based on these facts, appellant is hard pressed to demonstrate prejudice as a result of the trial court's ruling.
Further, appellant requested a continuance of a trial which already had been delayed for competency and sanity evaluations. The grant or denial of a continuance is a matter that is entrusted to the sound discretion of the trial court. State v.Lorraine (1993), 66 Ohio St.3d 414, 423. In making that consideration, the trial court must weigh all competing considerations. State v. Unger (1981), 67 Ohio St.2d 65. The standard of review is whether or not the trial court abused its discretion. State v. Spirko (1991), 59 Ohio St.3d 1, 18. In determining whether the trial court abused its discretion, a reviewing court must weigh the potential prejudice to the defendant against the public's interest in the prompt and efficient dispatch of justice. State v. Powell (1990), 49 Ohio St.3d 255,259. Particular consideration must be given to the reasons presented to the trial court at the time the request was denied. Unger, supra.
The trial court stated that the information requested was already in the file given to the psychiatrist. The trial had been delayed for months because of concerns for appellant's mental state. Appellant has failed to demonstrate any prejudice due to the trial court's denial of a continuance.
Appellant's third assignment of error is overruled.
 V.
Appellant's fourth assignment of error challenges the trial court's admission into evidence of a statement by Vera Weeks, a resident of the home appellant fled to following the January robbery. Weeks testified that she found a jacket on her porch two days after the robbery. Inside the jacket was a probation paper with appellant's name on it.
Appellant argues that the admission of the testimony violated Evid.R. 609 and Evid.R. 608 (B). However, both of these rules of evidence pertain to impeaching the character of the witness, not the accused. As appellant never testified, those rules are not pertinent. Evid.R. 404(B) prohibits the introduction of evidence of other crimes, wrongs or acts "to prove the character of a person in order to show that he acted in conformity therewith." An exception to this prohibition is evidence used to show identity. The state argues that the evidence was admitted to show appellant's identity as appellant gave police a false name at the time of his arrest. The trial court stated that the evidence was admissible because identification was an issue. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Dunlap (1995), 73 Ohio St.3d 308.
Generally, evidence of previous criminal acts, wholly independent of the criminal offense for which the defendant is on trial, is inadmissible. State v. Long (1989), 64 Ohio App.3d 615,617. Identity is an issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies he committed the crime. State v. Smith (1992), 84 Ohio App.3d 647. The police chased appellant from the backdoor of the restaurant to the Weeks' home where he was discovered covered with unwashed laundry, cowering between the shower stall and a basement wall. Appellant still wore the same clothing he had on during the robbery and his mask was in his back pocket. Although appellant gave police a false name, little, if any, doubt existed that appellant committed the January 23, 1997, robbery. Evid.R. 404(B) is strictly construed against admissibility. State v. Goines
(1996), 111 Ohio App.3d 840. Admitting the evidence when the perpetrator's identity is not in doubt fails to meet the identity exception set forth in Evid.R. 404 (B). Even with this in mind, appellant's conviction will be upheld if "there is no possibility that improperly admitted testimony concerning other acts contributed to the defendant's conviction, then the admission constitutes harmless error." State v. Elliott (1993), 91 Ohio App.3d 763,771, citing State v. Lytle (1976), 48 Ohio St.2d 391. See also State v. Cumin (1995), 73 Ohio St.3d 413, 426. The evidence of appellants guilt properly admitted at trial was overwhelming. There is no possibility that the testimony in issue here really contributed to his conviction.
Appellant's fourth assignment of error is overruled.
 VI.
In his fifth assignment of error, appellant contends his attorney was ineffective because defense counsel withdrew his motion of not guilty by reason of insanity. Appellant argues that, even though the trial court denied appellant's independent psychiatrist access to police reports and the prosecutor's file, his counsel should have continued with an insanity defense.
To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. State v. Smith (1987), 36 Ohio App.3d 162. Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. State v. Hamblin (1988), 37 Ohio St.3d 153. To establish prejudice, a defendant must show that there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Strickland, supra. at 694.
A defense of not guilty by reason of insanity places into question the defendant's mental status at the time the crime was committed. The defendant must establish that, at the time of the commission of the offense, the defendant did not know the wrongfulness of the acts committed as a result of a severe mental disease or defect. R.C. 2901.01 (14); State v. Robinson (March 5, 1998), Cuyahoga App. No. 72320, unreported. Therefore, a defendant is required to establish both that he did not appreciate the wrongfulness of the acts committed and that the he suffered from a severe mental disease or defect. State v. Wong
(1994), 95 Ohio App.3d 39.
The court-appointed psychiatrist, Dr. Clara Bozievich, testified that appellant did not have a severe mental disease or defect at the time the offenses were committed. Dr. Bozievich's opinion is that appellant was malingering the symptoms of a dissociative identity disorder. The doctor noted that appellant's dissociative episodes in which he spoke Spanish had never occurred prior to his arrest on January 23, 1997; appellant's symptoms were atypical for the disorder; appellant was not consistent when reporting symptoms; appellant's behavior at the time of arrest showed he knew his identity although he said he was Leo Gomez; and appellant would "thrust forward his illness" by commenting on his family's history of mental illness and telling people he was insane.
Defense counsel withdrew appellant's insanity defense after the trial court denied his motion for a continuance. The continuance was requested in order to allow the defense's psychiatrist time to review the prosecutor's file and the police report. The trial court concluded that the file already contained a synopsis of what the evidence for the aggravated robbery was in the case. Defense counsel withdrew the motion for not guilty by reason of insanity because he had no sanity report which would support the defense.
In State v. Sublett (Feb. 22, 1995), Medina App. No. 2355-M, unreported, the Ninth District Court of Appeals rejected an argument that the defendant received ineffective assistance of counsel for not pursuing an insanity defense. The court observed that defense counsel knew of two psychiatric examinations which did not support the defendant's contention that he suffered from Multiple Personalities Disorder. Similarly, in State v. Purcell
(1995), 107 Ohio App.3d 501, the First District Court of Appeals held that the defense counsel's decision to withdraw a defense of not guilty by reason of insanity did not constitute deficient performance as the defense was not supported by expert testimony. After all, an attorney is not required to plead the insanity defense just because it is the defendant's only chance to escape conviction. State v. Wong (1994), 97 Ohio App.3d 244. In State v.Long (May 8, 1995). Fayette App. No. CA94-05-005, unreported, the court held that, where the trial court conducts a hearing pursuant to R.C. 2945.37 and then finds the defendant competent to stand trial, the defendant is not denied effective assistance of counsel as a result of defense counsel's failure to pursue an insanity defense.
Here, defense counsel had no expert testimony which would have supported a defense of insanity. The court-appointed expert concluded that appellant was malingering. The defense's expert did not prepare an insanity report because he wanted additional information. Defense counsel's performance was not deficient. The decision to forego an insanity defense did not deprive appellant of a fair trial which is a trial whose results are reliable. Appellant cannot show prejudice. Without expert testimony supporting appellant's insanity defense, there is little likelihood the result of the trial would have been different.
Appellant's fifth assignment of error is without merit.
Judgment affirmed in part, reversed in part, and remanded for re-sentencing.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE. P.J. and PATRTCIA A. BLACKMON.J. CONCUR.
LEO M. SPELLACY, JUDGE.