1999 OK CR 39

**Alexis Nicolai PERRYMAN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–98–566.

Court of Criminal Appeals of Oklahoma.

Oct. 18, 1999.

Jim Rowan, Oklahoma Indigent Defense System, Capital Trial Division, Norman, Larry Tedder, Oklahoma City, for Appellant at trial.

Stephen Deutsch, Sean Morgan, Assistant District Attorneys, Oklahoma City, for the State at trial.

Nancy Walker–Johnson, Oklahoma Indigent Defense System, Norman, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General, of Oklahoma, William R. Holmes, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## *OPINION*

STRUBHAR, Presiding Judge:

¶1 Alexis Nicolai Perryman, hereinafter Appellant, was convicted of Count One—Murder in the first degree (21 O.S.1991, § 701.7(A)), Count Two—Arson in the first degree (21 O.S.1991, § 1401) and Count Four—Larceny of a Motor Vehicle (21 O.S.1991, § 1720), following a jury trial in the District Court of Oklahoma County, Case No. CF–96–2073, the Honorable Daniel L. Owens, District Judge, presiding. The jury recommended life imprisonment without parole on count one, thirty-five (35) years imprisonment on count two and twenty (20) years

imprisonment on count four. The trial court sentenced Appellant accordingly and ordered the sentences to run consecutively. From this judgment and sentence, he appeals. We affirm.

¶2 On March 6, 1996, Appellant and Nick Karlin shot and stabbed to death Charles Meers in Meers' Oklahoma City residence. The contested issue at trial was whether Appellant killed Meers with malice aforethought or in self-defense. According to Appellant, he met Meers, a homosexual man, outside the Habana Inn where Appellant was panhandling for change to buy beer. Meers invited Appellant and Karlin to his house to drink his liquor. Appellant told Meers that he and Karlin were not homosexuals so Meers would not get the wrong impression. At Meers' home, the three drank liquor and talked as Appellant attempted to play one of Meers' video-games. When Appellant could not operate the game, Meers sat down beside Appellant and put his arm around him. Appellant pushed· Meers away and asked if Meers was trying to kiss him. Meers apologized and said he was not trying to do anything. Shortly thereafter, Appellant claimed he passed out and awoke when Meers was trying to unzip his pants. Appellant testified he hit Meers with his fist and with his belt and then kicked Meers in the head. After Meers was incapacitated, Appellant awakened Karlin, gathered their belongings and exited Meers' home. When they were on the porch Appellant heard Meers mumbling and turned around to see Meers with a gun coming towards him. Appellant claimed Meers grabbed him by the shirt collar and put the gun to his face. When Appellant opened his mouth to speak, Meers inserted the barrel of the gun into Appellant's mouth and pulled Appellant back into the house. Once inside, Appellant claimed Karlin came up behind Meers and stabbed him. When Meers turned his head, Appellant grabbed the gun from Meers and hit him. When Meers looked back at Appellant, Appellant said he felt like Meers was coming for him so he shot him twice in the face. Appellant said it was Karlin who suggested burning the house so they would not get caught. Appellant could not remember pouring gasoline around the house, taking the parachute, stereo, boom box and speakers to the car, driving back to Guthrie or burning Meers' truck. Appellant admitted he threw the gun into the lake and that he lied when it was to his benefit.

¶3 Contrary to Appellant's trial version of events, he told others a somewhat different version shortly after the homicide. William Garton testified Appellant told him that Meers made an advance towards him after which Appellant and Karlin began walking out of Meers' house. Meers said something to them and Appellant turned around and beat Meers with his spiked belt. After Meers was incapacitated, Appellant went to the kitchen and said he was going to get a knife. Meers jumped up and ran towards his bedroom, but Appellant caught him from behind and stabbed him repeatedly until Meers was not moving. Appellant and Karlin then searched the house for a gun because they believed Meers was probably running to his room to get one. After they found a gun, Appellant shot Meers "a couple of times to make sure he was good and dead." Appellant and Karlin retrieved from Meers' truck some cans of flammable liquids, poured the liquids around the house, stacked some of the cans around Meers' body, loaded Meers' truck with some valuables, lit the fire and drove away. Garton also claimed Appellant gave him a piece of paper with names and directions on it and asked Garton to eliminate the possible witnesses listed on the piece of paper.

¶4 Stephanie Hughes testified in the early morning hours of March 16th, Appellant came to the apartment they shared and asked her boyfriend, Justin Erwin, to go get rid of a truck he had just stolen. Appellant stated he had killed "a fag" and needed Erwin's help. After Appellant and Erwin returned to the apartment later that day, Hughes noticed blood on the cuffs of Appellant's jeans. Appellant also had items he had taken from Meers' home, a bloody knife and a pistol. Appellant told Hughes that after he met Karlin at The Wreck Room, a "fag" asked them to go back to his house and get drunk. When the man tried to "hit on" Appellant, Appellant hit him and the man went for a gun. Appellant then beat him until he was unconscious. Appellant said

they then stabbed and shot the man, put cigarettes out in his eyes, cut off his nose and legs at the knees, urinated on him, took his personal property, set the house on fire, stole his truck and left. Justin Erwin's testimony was substantially the same as Hughes. Other facts will be discussed as they become relevant to the propositions of error raised for review.

¶ 5 In his first proposition of error, Appellant claims he was denied his fundamental right to present a defense when the trial court refused to allow Dr. Smith to testify in the first stage of trial about Appellant's post-traumatic stress disorder [hereinafter PTSD] to support his claim of self-defense. Appellant contends expert testimony would have aided the trier of fact in assessing how his experiences as an abused child affected his state of mind at the time of the homicide.

¶ 6 Prior to trial, the trial court held three lengthy hearings to determine if Dr. Smith should be allowed to testify in first stage. At the February 9th hearing, defense counsel advised that he intended to proceed on the justifiable homicide defense of self-defense and as part of the defense he wished to call Dr. Smith to testify that Appellant was raped at the age of twelve by a homosexual man he believed to be his father. Because Appellant recanted his allegation of rape against the man, counsel argued he needed Dr. Smith to establish that Appellant was actually raped and to support the position that Appellant was hypersensitive and did not act unreasonably after Meers' unwanted advance given his prior sexual assault by a homosexual male. Counsel further argued he needed the expert to explain Appellant's violent reaction after the homicide of ransacking the house, taking valuables, burning the house and stealing and burning Meers' truck. Counsel argued in order to judge Appellant at the moment that he made the decision to pull the trigger, "you have to know where he has been and how he got there." Counsel acknowledged the expert could not testify about the ultimate issue, i.e. whether Appellant was guilty or not guilty or whether he acted in self-defense, based on *Hooks v. State*, 1993 OK CR 41, ¶ 16, 862 P.2d 1273, 1278–79, *cert. denied*, 511 U.S.

1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). At the conclusion of this hearing, the trial court asked for some authority that would permit admission of PTSD evidence in first stage.

¶ 7 On February 11, 1998, the trial court again heard argument. Unfortunately, the parties failed to provide the trial court with relevant case law. Defense counsel submitted and argued cases that dealt with battered woman syndrome and battered child syndrome in which the accused had killed his or her abuser. Based on the argument and authority presented, the trial court concluded that the expert would not aid the trier of fact because the expert could not render an opinion that Appellant reacted the way he did because of his prior rape because such opinion invades the province of the jury.

¶ 8 On February 20, 1998, the trial court allowed defense counsel to make an offer of proof in which counsel called Dr. Smith to testify. Dr. Smith concluded Appellant suffered from PTSD as a result of being raped and sodomized at the age of 12 by a homosexual man. Dr. Smith confirmed that PTSD is a recognized disorder and diagnosis among competent psychiatrists and clinicians and is found in the Diagnostic and Statistical Manual IV. Dr. Smith believed his testimony would be important to a jury of lay persons to understand the mental state of Appellant at the time of the shooting and how his PTSD affected his reactions. Dr. Smith conceded it was his opinion that Appellant could be an aggressor despite his PTSD. After defense counsel reurged his prior argument at the conclusion of Dr. Smith's testimony, the trial court reaffirmed its prior ruling that Dr. Smith's testimony would not be allowed in first stage.

¶ 9 Under Oklahoma law, "[s]elf-defense is a defense although the danger to life or personal security may not have been real, if a reasonable person, in the circumstances and from the viewpoint of the defendant, would reasonably have believed that he/she was in imminent danger of death or great bodily harm." OUJI–CR2d 8–46. *See also* 21 O.S.1991, § 733(2). Oklahoma's standard of self-defense is a hybrid, combining both an objective and subjective standard.

*Bechtel v. State*, 1992 OK CR 55, ¶ 33, 840 P.2d 1, 11. As such, a fact finder must first determine whether the defendant believed that he was faced with imminent danger of death or great bodily harm before he used physical force and then determine whether the defendant's belief was reasonable. The fact-finder must view the situation first from the subjective perspective of the defendant, but the defendant's belief then must be found to be objectively reasonable. As we said in *Bechtel*, 1992 OK CR 55, at ¶ 12, 840 P.2d at 6, "[t]he bare belief that one is about to suffer death or great personal injury will not, in itself, justify taking the life of [one's] adversary. There must exist *reasonable* grounds for such belief at the time of the killing." (emphasis in original).

¶ 10 It is generally accepted that evidence of PTSD, like battered woman and child syndromes, is relevant when the accused kills his or her abuser. Such evidence is offered to explain the reasonableness of the accused's belief in the imminence of danger of great bodily harm since the abuser and the accused share a past that includes violence. *See Bechtel*, 1992 OK CR 55, at ¶ 28, 840 P.2d at 10. This Court has not addressed to what extent an accused's PTSD is relevant to prove the accused's belief was reasonable in a case where the accused and the aggressor/victim have no prior violent history. Other jurisdictions are divided on the admissibility of PTSD in first stage to support a claim of self-defense when the accused does not kill his or her abuser. *See U.S. v. Simmonds*, 931 F.2d 685, 688 (10th Cir.), *cert. denied*, 502 U.S. 840, 112 S.Ct. 129, 116 L.Ed.2d 97 (1991)(evidence of PTSD offered to support defense of self-defense); *Bryant v. State*, 271 Ga. 99, 515 S.E.2d 836, 838 (1999)(Georgia courts do not allow the defendant to justify a killing with evidence of prior abuse by anyone other than the victim on the basis that it would be difficult for the State to test the credibility of evidence of abuse by third parties); *Osby v. State*, 939 S.W.2d 787, 790–91 (Tex.App.1997)(holding PSTD inadmissible to support self-defense claim in first stage despite subjective standard of self-defense); *State v. Purcell*, 107 Ohio App.3d 501, 669 N.E.2d 60, 62–63 (1995)(evidence of PTSD admitted to prove

self-defense); *State v. Thompson*, 244 Neb. 375, 507 N.W.2d 253, 268–69 (1993)(evidence of prior abuse by a third party was properly excluded as irrelevant to defendant's claim of self-defense) and *Shepard v. State*, 847 P.2d 75, 81 (Alaska App.1993)(trial court erred in excluding evidence of PTSD to rebut state's claim that defendant's conduct in the aftermath of the shootings established his consciousness of guilt).

¶ 11 This Court must review the trial court's ruling on the admissibility of PTSD evidence in the instant case for an abuse of discretion. *Douglas v. State*, 1997 OK CR 79, ¶ 55, 951 P.2d 651, 669, *cert. denied*, ── U.S. ──, 119 S.Ct. 195, 142 L.Ed.2d 159 (1998). An abuse of discretion will be found only when the trial court's conclusion or judgment is clearly against the logic and effect of the facts presented. *See State v. Love*, 1998 OK CR 32, ¶ 2, 960 P.2d 368, 369. In the instant case, the facts asserted by Appellant both at trial and in his statement to police, that Meers held a gun to his head and he disarmed and shot him, constitute classic self-defense. Appellant testified that after he beat and kicked Meers after Meers tried to unzip his pants, he believed the fight was over. Appellant claimed he would never have gone back into the house and killed Meers had Meers not pointed a gun at him and forced him back into the house. Appellant also testified that he had overlooked men making passes at him which happened frequently in the past. Further, Appellant elected not to testify about his prior rape and how that affected his belief that he was in imminent danger of great bodily harm because that would have opened the door to other evidence which showed Appellant had been in similar circumstances and reacted violently without any provocation. Based on this record, we cannot say the trial court abused its discretion in denying Dr. Smith's testimony in first stage. Appellant presented a classic case of self-defense. The jury was properly instructed on self-defense and heat of passion manslaughter and rejected both based on strong evidence of guilt. Accordingly, we find relief is not warranted and this proposition is denied.

¶ 12 In his second proposition of error, Appellant claims he was denied a fair sentencing hearing on his non-capital offenses because the jury rendered the maximum sentences on the non-capital offenses following the second stage of trial after it heard evidence in support of the aggravating circumstances alleged in the Bill of Particulars and victim impact evidence. Rather than litigating the issue of punishment for the non-capital offenses in the first stage of trial, the trial court submitted only the issue of guilt/innocence during first stage and the issue of punishment for all offenses during second stage. Because the jury heard evidence it would not otherwise have heard were it not for the filing of the Bill of Particulars, Appellant maintains the jury was prejudiced against him.

¶ 13 Title 21 O.S.Supp.1992, § 701.10 provides for a separate sentencing stage to determine punishment in a capital murder proceeding. However, bifurcation is not required for non-capital unenhanced offenses. *See* 22 O.S.1991, § 926. *See also Wisdom v. State,* 1996 OK CR 22, ¶ 18, 918 P.2d 384, 390; *Reed v. State,* 1983 OK CR 12, ¶ 20, 657 P.2d 662, 665, *cert. denied,* 464 U.S. 933, 104 S.Ct. 337, 78 L.Ed.2d 307 (1983). In interpreting section 701.10, this Court has previously held that trial courts may not introduce evidence of statutory aggravating circumstances in non-capital first degree murder cases. *McCormick v. State,* 1993 OK CR 6, ¶ 38–39, 845 P.2d 896, 902–03. This Court has also held it is error to conduct a second stage in a non-capital trial for the purposes of presenting victim impact evidence to the jury. *Cooper v. State,* 1995 OK CR 22, ¶ 3, 894 P.2d 420, 422.

¶ 14 There are no cases addressing this precise issue. Because we have held that sentencing juries in unenhanced, non-capital crimes should not be exposed to evidence of statutory aggravating circumstances or victim impact evidence, we find error occurred in the instant case and implement the following scheme to avoid further error. Whenever a defendant is charged with multiple counts, one or more of which is capital murder and one or more of which are unenhanced non-capital offenses, trial shall be bifurcated. The non-capital crimes shall be tried to guilt or innocence and punishment in the first stage. The capital murder crimes shall be tried to guilt or innocence in the first stage and punishment in the second stage.

¶ 15 Having found that error occurred, we must now determine if Appellant was prejudiced by the error and whether relief is warranted. The State contends that the instructions administered clearly channeled the decision making process and that a juror of average intelligence would have understood that the evidence of aggravation and victim impact was to be considered only in regard to the capital murder charge. With this we cannot agree. While we agree that the evidence of guilt on the arson and larceny charges was overwhelming and deserving of a severe sentence, it is impossible to conclude that the jury was not influenced in its sentencing decision on the non-capital offenses by the substantial evidence of aggravation and victim impact. As such, we find the appropriate remedy is to modify Appellant's sentence for first degree arson from thirty-five years imprisonment to twenty-five years imprisonment and his sentence for larceny from twenty years imprisonment to ten years imprisonment. 22 O.S.1991, § 1066.

¶ 16 In his last proposition of error, Appellant argues that his consecutive sentences are excessive and should be modified because the punishment does not bear a direct relationship to the nature and circumstances of the offenses. This Court has consistently held that where a sentence is within statutory limits, the sentence imposed by the jury will not be modified unless under the facts and circumstances of the case it is so excessive as to shock the conscience of the Court. *Freeman v. State,* 1994 OK CR 37, ¶ 38, 876 P.2d 283, 291, *cert. denied,* 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). The record before this Court shows Appellant brutally beat, stabbed and shot Charles Meers, stole his truck and set Meers' house on fire to avoid detection. The record also shows Appellant has a history of violence. As we have previously modified Appellant's sentences for arson and larceny, those sentences will stand as modified. Because the sentence

of life without parole is within statutory limits and is not so excessive based on this record as to shock this Court's conscience, we find Appellant's conviction and sentence should be and is hereby AFFIRMED.

JOHNSON, J., CHAPEL, J., and LILE, J., concur.

LUMPKIN, V.P.J., concurs in part/dissents in part.

LUMPKIN, Vice Presiding Judge: Concurs in Part/Dissents in Part.

¶1 The Court's opinion cites no statutory authority which requires trial courts to conduct a bifurcated trial in cases where a defendant is charged with both capital and unenhanced non-capital counts in the same proceeding. In the absence of such legislative enactment, this Court should exercise self-discipline and refrain from creating such a procedure here. *See Kelsey v. State*, 1987 OK CR 206, ¶9, 744 P.2d 190, 193 ("In the absence of relevant authority to the contrary, ... such a claim falls within the sphere of the Legislature.").

¶2 I find no reason to modify a sentence based upon a procedure which is not prohibited by statute and to which Appellant's counsel did not object at trial. Furthermore, there is no reason to simply assume the jury was confused or misled by the jury instructions to the point that it considered the capital aggravating circumstances in deciding punishment on the non-capital offenses, Counts II and IV. In fact, the record does show the instructions in this case clearly channeled the jury's decision-making process as between the non-capital and the capital offenses. Rather than applying the jurisprudence of this Court that presumes the jury follows the instructions of the trial judge, the Court speculates the jury was influenced by the evidence in aggravation without also applying the evidence presented in mitigation. When all the evidence is considered, there is no showing of prejudice, much less error.

¶3 Therefore, I concur in affirming the Judgment and Sentence in Count I and the judgments in Counts II and IV. However, I find no error in the trial procedure which was utilized and no basis in law or fact to modify the sentences in Counts II and IV. Accordingly, I dissent to the modification of the sentences in Counts II and IV.